Earsel L. JOHNSON, Appellee,

v.

Bill HAY, Appellant.

No. 90–1517.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 15, 1990.

Decided April 15, 1991.

458

Bruce Farmer, Jefferson City, Mo., for appellant.

Bernard F. Weinand, Kansas City, Mo., for appellee.

Before JOHN R. GIBSON, Circuit Judge, HENLEY, Senior Circuit Judge, and CONMY,[*] District Judge.

JOHN R. GIBSON, Circuit Judge.

Bill Hay, a pharmacist formerly employed by the Missouri Department of Corrections, appeals from an order denying his motion for summary judgment. Earsel Larry Johnson brought suit against Hay claiming that Hay violated his eighth amendment rights by intentionally refusing to fill prescriptions for anti-seizure medicines. Hay claims that he is entitled to summary judgment based on qualified immunity and on the merits of Johnson's claim. Johnson also seeks an award of sanctions pursuant to Fed.R.App.P. 38. We affirm the judgment of the district court[1] and deny Johnson's request for sanctions.

Johnson was transferred from the county jail in Farmington, Missouri, to the Missouri Department of Corrections on January 20, 1984. At that time, Dr. Vo, a prison doctor, examined Johnson. Although Johnson's medical records were not forwarded with him, Johnson told Dr. Vo that he suffered from seizures and that he had been taking Dilantin and Phenobarbital. Dr. Vo noted this in his medical records, and wrote prescriptions for these medications.

On May 5, 1986, Dr. McElroy, another prison doctor, issued Johnson a 30–day pre-scription for Phenobarbital and Dilantin. These prescriptions expired 30 days later, on June 4, 1986. Johnson did not, however, obtain another prescription for either of these medicines until after these prescriptions expired. On July 3, 1986, Dr. Bowers issued a six-month prescription for Dilantin, and on July 18, 1986, another prison doctor, Dr. Charles Tillman, issued 30–day prescriptions for Phenobarbital and Dilantin. On August 4, 1986, Dr. McElroy issued Johnson a six-month prescription for Phenobarbital and Dilantin.

Hay refused to fill the July 18 or August 4 prescriptions, and Johnson suffered one seizure on approximately July 21 and another seizure about one week later. On August 12, Dr. Bowers examined Johnson and renewed Johnson's prescriptions for Phenobarbital and Dilantin, and these medications have been provided to Johnson since that time.

Hay did not fill the July 18 and August 4 prescriptions based on his determination that the seizure medications were not appropriate. Hay made this determination based on his review of Johnson's medical records and discussions with Dr. Bowers and Johnson's housing unit sergeant, who both indicated that they had not observed Johnson having a seizure during the period of time when he would have been without medication.

Hay also stated that he did not fill the prescriptions because he found certain discrepancies in the prescriptions, and numerous inconsistencies in Johnson's version of his medical history to penitentiary authorities. In particular, he noted that the July 18 thirty-day prescription for Dilantin overlapped with the July 3 six-month prescription for that drug. Hay testified that his initials on the July 3 prescription for Dilantin indicate that he filled the July 3 prescription, but that he did not know if Johnson received Dilantin pursuant to that prescription. Hay stated that when a six-month prescription is written, the medication is actually distributed on a daily

---

[*] The HONORABLE PATRICK A. CONMY, Chief United States District Judge for the District of North Dakota, sitting by designation.

1. The Honorable William A. Knox, United States Magistrate, Western District of Missouri.

basis for six months. He also testified the prison had a computerized system that generates a print-out identifying medications prescribed and distributed to each inmate. Evidently this print-out was not a part of the record in the district court.

Hay also conducted a review of Johnson's medical records and found no diagnosis of a seizure disorder, only a statement that he claimed to have such a disorder. The penitentiary, however, did not receive Johnson's medical records from the county jail in Farmington, Missouri, where Johnson had been seen by Dr. Carl Artman. Johnson filed Dr. Artman's affidavit in the summary judgment proceedings. Dr. Artman stated that he examined Johnson in 1984 and determined that Johnson suffered from seizure activity. After prescribing Dilantin, Johnson's condition improved. When Johnson was sentenced to prison, Dr. Artman forwarded Johnson's medical records to Jefferson City.

Hay states that his investigation into Johnson's medical history led him to have serious doubts about the legitimacy of the July 18 and August 4 prescription orders and, therefore, he exercised his professional judgment not to dispense the medication.

Johnson filed suit under 42 U.S.C. § 1983 (1988) claiming that Hay violated his eighth amendment rights by intentionally withholding his medications. After filing this action, the parties conducted extensive discovery. Hay filed a motion for summary judgment based on qualified immunity and on the merits of Johnson's claim.

The district court transferred Hay's summary judgment to the United States Magistrate under 28 U.S.C. § 636(c) (1988), and entered an order setting the case for jury trial on March 26, 1990. On March 22, 1990, after the parties filed cross motions for summary judgment, the magistrate judge denied Hay's summary judgment motion concluding that a dispute of fact existed as to whether Hay acted reasonably in refusing to fill the prescriptions. *Johnson v. Hay*, No. 86–4559–CV–C–5, slip op. at 3 (W.D.Mo. March 22, 1990).

■ Hay filed a notice of appeal. The district court refused to continue the trial, so Hay filed a motion to stay with this court. After we issued a temporary stay, the district court continued the trial, and we issued an order denying the motion for stay as moot.[2]

I.

■ Hay first contends that the district court erred in denying his summary judgment motion based on qualified immunity. At the outset, we must decide whether we have jurisdiction to consider whether Hay is entitled to summary judgment based on qualified immunity.

The Supreme Court has made clear that qualified immunity is "an *immunity from suit* rather than a mere defense to liability," and that "it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985) (emphasis in original). For this reason, the district court's denial of a claim of qualified immunity, "to the extent that it turns on an issue of law," is an appealable final decision under the collateral order doctrine notwithstanding the absence of a final judgment. *Id.* at 530, 105 S.Ct. at 2817.

The district court's denial of Hay's summary judgment motion was not based on a ruling that Hay violated clearly established

---

2. We have held that "'[a] federal district court and a federal court of appeals should not attempt to assert jurisdiction over a case simultaneously,'" and that the filing of a notice of appeal "'confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal.'" *United States v. Ledbetter*, 882 F.2d 1345, 1347 (8th Cir.1989) (quoting *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58, 103 S.Ct. 400, 402, 74 L.Ed.2d 225 (1982) (per curiam)). Once a notice of appeal has been filed in a case in which there has been denial of a summary judgment motion raising the issue of qualified immunity, the district court should then stay its hand. Jurisdiction has been vested in the court of appeals and the district court should not act further. If the appeal is utterly lacking in merit and for the purpose of delay only, this court may take appropriate action. *See, e.g., Chicago & North Western Transp. Co. v. Ulery*, 787 F.2d 1239 (8th Cir.1986) (appeal dismissed).

law. Instead, the district court denied the motion because it concluded that a dispute of fact existed as to whether Hay acted reasonably in refusing to fill the prescriptions.

We have held that we have jurisdiction to hear an appeal of an order denying defendant's motion for summary judgment based on qualified immunity even when the appeal presents an issue that is not purely "legal". *Wright v. South Arkansas Regional Health Center, Inc.*, 800 F.2d 199, 203 (8th Cir.1986). In *Wright*, the district court denied defendant's motion for summary judgment based on qualified immunity concluding that a genuine issue of fact existed as to whether the official retaliated against the plaintiff for exercising his first amendment rights. *Id.* at 202–03. We reversed, holding that because the record did not create a triable issue of fact the issue could be decided on appeal as one of law. *Id.* at 203.

We believe that the circumstances here are analogous to those in *Wright.* In essence, Hay's appeal, although largely fact-based, presents the legal question of whether Hay's conduct violated clearly established law of which a reasonable official would have known. We therefore believe it appropriate to decide this appeal. *Mitchell*, 472 U.S. at 528, 105 S.Ct. at 2816 ("To be sure, the resolution of these legal issues will entail consideration of the factual allegations that make up the plaintiff's claim for relief"). *See also Johnson–El v. Schoemehl*, 878 F.2d 1043, 1047 (8th Cir.1989) (appellate review includes prima facie legal and factual issues); *Walker v. Schaeffer*, 854 F.2d 138, 141 (6th Cir.1988) (whether defendants' actions violated plaintiffs' clearly established constitutional rights is "essentially a legal question").

■ In ascertaining whether Hay is protected by qualified immunity, we must decide "the essentially legal question whether the conduct of which [Johnson] complains violated clearly established law," and if Johnson's complaint adequately alleges commission of such acts. *Mitchell*, 472 U.S. at 526, 105 S.Ct. at 2815. The Supreme Court's later decision in *Anderson v.*

*Creighton*, 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987), further clarifies that the test for qualified immunity at the summary judgment stage is an objective one. To be clearly established "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right ... [and] that in the light of pre-existing law the unlawfulness must be apparent." *Id.* at 640, 107 S.Ct. at 3039; *see also Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982) ("On summary judgment, the judge appropriately may determine, not only the currently applicable law, but whether the law was clearly established at the time an action occurred"). Hay, therefore, is entitled to summary judgment if discovery failed to uncover evidence sufficient to create a genuine issue as to whether his conduct violated clearly established law. *Mitchell*, 472 U.S. at 526, 105 S.Ct. at 2815.

We review the district court's denial of summary judgment under the same standard as that the district court applied to the motion. A party is entitled to summary judgment only when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). We view the evidence in the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences. *United States v. City of Columbia, Missouri*, 914 F.2d 151, 153 (8th Cir.1990).

Hay claims that his refusal to fill the prescriptions did not violate Johnson's clearly established rights. He claims that at the time he withheld Johnson's medicines, the law governing his conduct was not clearly established and that a reasonable pharmacist could have believed that he was not violating Johnson's constitutional rights in refusing to fill the prescriptions.

■ Hay points to a lack of "any case law that has interpreted a prison pharmacist's constitutional responsibility" to support his argument that the law governing his conduct was not clearly established. To show that the law is "clearly established", a plaintiff must make a "particularized"

showing that a "reasonable official would understand that what he is doing violate[d]" plaintiff's rights. *Anderson*, 483 U.S. at 640, 107 S.Ct. at 3039. A government official is not required to guess, at his peril, the future development of constitutional doctrine. *See Mitchell*, 472 U.S. at 535 n. 12, 105 S.Ct. at 2820 n. 12. A government official cannot be held liable for a "violation of extremely abstract rights." *Anderson*, 483 U.S. at 639, 107 S.Ct. at 3039. This is not to say, however, "that an official action is protected by qualified immunity unless the very action in question has been held unlawful." *Id.* at 640, 107 S.Ct. at 3039; *Coffman v. Trickey*, 884 F.2d 1057, 1063 (8th Cir.1989) ("It is not necessary that [the official's] action has been previously held unlawful, but only that, in view of pre-existing law, the unlawfulness of [the official's] act is apparent"), *cert. denied*, —— U.S. ——, 110 S.Ct. 1523, 108 L.Ed.2d 763 (1990).

We are satisfied that at the time Hay withheld Johnson's seizure medication, the law governing his conduct was clearly established. In *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), the Supreme Court concluded that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' ... proscribed by the Eighth Amendment." *Id.* at 104, 97 S.Ct. at 291 (quoting *Gregg v. Georgia*, 428 U.S. 153, 173, 96 S.Ct. 2909, 2925, 49 L.Ed.2d 859 (1976)). The Court went on to note that such treatment violates the eighth amendment "whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." 429 U.S. at 104–05, 97 S.Ct. at 291–92 (footnotes omitted). Similarly, this court has held that defendants were not entitled to summary judgment on a prisoner's eighth amendment claim based on the prisoner's allegations that the defendants deliberately denied him access to medical care and failed to carry out treatment prescribed by his doctors. *Cum-*

*mings v. Roberts*, 628 F.2d 1065, 1067–68 (8th Cir.1980).

There is no doubt that Hay intentionally, not inadvertently, refused to fill Johnson's prescriptions, and that this conduct amounts to intentional interference with the treatment prescribed by his attending physicians. At the time of Hay's action, the law clearly established that a prison pharmacist could not intentionally interfere with or fail to carry out treatment prescribed for a prisoner. *See Estelle*, 429 U.S. at 104–05, 97 S.Ct. at 291–92; *Cummings*, 628 F.2d at 1068. Thus, we reject Hay's claim that at the time he withheld Johnson's medicines the law governing his conduct was not clearly established.

■ We also reject Hay's claim that he reasonably could have believed that he was not violating Johnson's constitutional rights by refusing to fill the prescriptions. Hay claims that his refusal to fill the prescriptions was medically justified and objectively reasonable in view of the information available to him. Although Hay's subjective beliefs are irrelevant, the facts surrounding his decision are highly relevant to determining whether a reasonable pharmacist could have believed he was not violating Johnson's constitutional rights. *See Anderson*, 483 U.S. at 641, 107 S.Ct. at 3039 (determination whether it was objectively legally reasonable to conclude that a given search was supported by probable cause or exigent circumstances will often require examination of the information possessed by the searching officials; subjective beliefs are irrelevant).

Hay argues that the undisputed evidence shows that he reasonably could have believed that he was not violating Johnson's constitutional rights by refusing to fill the two prescriptions. For support, Hay points out that: (1) Johnson's available medical records did not contain any documentation or diagnosis of a seizure disorder; (2) Hay believed Johnson was receiving Dilantin pursuant to the July 3 six-month prescription; (3) Johnson had not sought a renewal of his May 5 prescription until July 3, and had been without medication for about 30 days without suffering a seizure; (4) John-

son had a "long history of drug seeking behavior" [3]; (5) security problems in the prison warranted Hay's delay in filling the prescriptions; and (6) that Hay's legal and ethical responsibilities prevented him from filling the prescriptions.

Hay claims that the circumstances here are analogous to those in *Givens v. Jones,* 900 F.2d 1229 (8th Cir.1990). In *Givens,* an inmate brought a 42 U.S.C. § 1983 claim against a prison official alleging, among other things, that the prison psychiatrist violated his eighth amendment rights by prescribing a medication to which he was allergic. *Id.* at 1231. This court held that the prison psychiatrist was "protected by qualified immunity because he reasonably could have believed that he was not violating [the inmate's] constitutional rights by prescribing" a drug the inmate claimed to be allergic to. *Id.* at 1232. "Certainly physicians do not, and should not, necessarily accept as true the medical judgments offered by their patients." *Id.*

The facts here, however, are not like those in *Givens.* Johnson does not allege an eighth amendment violation based on a disagreement with the course of treatment selected by his physician. *Cf. Lair v. Oglesby,* 859 F.2d 605, 606 (8th Cir.1988) ("Mere disagreement with medical treatment ... does not constitute a constitutional violation"). Instead, Johnson alleges that Hay deliberately disregarded the very course of treatment prescribed by his physicians.

We believe that a genuine issue of fact exists as to whether a prison pharmacist reasonably could have believed that he was not violating Johnson's constitutional rights by refusing to fill the prescriptions. *Cf. Givens,* 900 F.2d at 1232–33. Although Hay reviewed Johnson's available medical records, it is evident that Johnson's medical records prior to his incarceration at the Missouri State Penitentiary were not available for review. Moreover, although Hay's review indicated that Johnson did not have

a seizure during the period of time in which he would have been without medication, Hay did not personally examine Johnson or request a prison doctor to examine Johnson to determine the appropriateness of the medication orders. Hay did not contact Johnson's prescribing physicians, advise any doctor that he intended to withhold Johnson's medications, or contact the originally diagnosing physician, Dr. Artman. Even assuming that Hay could have reasonably believed that Johnson was receiving Dilantin pursuant to the July 3 prescription, there is no corresponding prescription for Phenobarbital. Moreover, on the state of this record, we cannot conclude that Hay's testimony that the July 3 prescription was processed in the "normal manner through the pharmacy" constitutes substantial evidence that Johnson actually received Dilantin pursuant to that prescription. Finally, although Hay states that there were safety concerns in the prison caused by unnecessary medications, he also admits that he was not aware of any evidence suggesting that Johnson was using the medicines inappropriately.

■ Hay also claims that he relied on advice from an attorney in refusing to fill the prescriptions, and therefore, he reasonably believed that he was not violating Johnson's constitutional rights. Hay's reliance on legal advice, however, consists of reliance on an article published by an attorney in a 1980 professional medical journal. The article discusses a pharmacist's responsibility for dispensing controlled substance prescriptions stating:

A pharmacist who has any doubts, whatever, concerning the legitimacy of a prescription order presented to him should not dispense it. The pharmacist is required to exercise his own professional judgment with respect to the legitimacy of prescription orders he dispenses.

**3.** Dr. Bowers submitted an affidavit stating that Johnson's medical records reveal that Johnson has a history of "drug seeking behavior." Hay testified in his deposition, however, that although excessive medication could cause general security problems, he was unaware of any evidence that Johnson was using medications inappropriately other than a generalized "hunch".

Stone, *Pharmacist's Responsibility for Controlled Substance Prescription Orders*, Missouri Pharmacist (April, 1980).

Hay's reliance on this article does not establish that Hay acted reasonably in withholding Johnson's medications. This is not a case in which Hay relied on legal advice he obtained concerning the legality of the specific action taken. *Cf. Lee v. Mihalich*, 847 F.2d 66, 71 (3d Cir.1988) (attorney consulted on legality of specific action taken); *Young v. Lynch*, 846 F.2d 960, 963 (4th Cir.1988) (same); *Duncan v. Peck*, 844 F.2d 1261, 1267–68 (6th Cir.1988) (same); *Bier v. Fleming*, 717 F.2d 308, 312–13 (6th Cir.1983) (same), *cert. denied*, 465 U.S. 1026, 104 S.Ct. 1283, 79 L.Ed.2d 686 (1984); *Street v. Cherba*, 662 F.2d 1037, 1040 (4th Cir.1981) (same); *Felak v. United States*, 677 F.Supp. 606, 608 (D.Minn.1988) (same). Moreover, the article Hay relies on discusses the propriety of withholding "illegal and fraudulent prescription orders." Hay concedes that he had no doubts about the prescribing physicians' credentials or that the medications were actually prescribed. Hay only refused to fill the prescriptions because he believed that they were not "medically appropriate." Moreover, the article concerns dispensing controlled substances and Hay does not argue that Dilantin is a controlled substance. *See* Mo.Rev.Stat. § 195.017 (West 1991). Finally, even the article suggests that when a pharmacist has doubts about the legitimacy of a prescription, "the best remedy may well be a call to the concerned physician," an action Hay admits he did not take. For these reasons, we conclude that Hay is not entitled to summary judgment based on qualified immunity. *See Green v. Baron*, 925 F.2d 262, 263 (8th Cir.1991).

■ Hay also claims that he is entitled to summary judgment based on the merits of Johnson's claims. Hay contends that our review is not limited to the qualified immunity issue and we may also decide whether Hay is entitled to summary judgment based on the merits. In light of our discussion above, we are convinced that the material facts in dispute are sufficient to allow a "reasonable jury" to conclude that Hay acted with deliberate indifference to Johnson's medical needs. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986).

II.

■ Finally, Johnson requests sanctions pursuant to Fed.R.App.P. 38. He contends that Hay appealed to this court solely for purpose of delay, and has caused him unnecessary expense. We have carefully considered this issue, but cannot conclude that Hay's appeal is frivolous. We therefore deny Johnson's request for sanctions.

We affirm the judgment of the district court[4] and deny Johnson's request for sanctions.

---

**4.** After this panel issued its opinion in this case, we were notified that a suggestion of death had been filed some days earlier with the clerk of this court pursuant to Fed.R.App.P. 43(a). We asked the parties for a briefing on the resultant status of this case. This court specifically held in *White v. Walsh*, 649 F.2d 560, 562 n. 4 (8th Cir.1981), that the Missouri survivorship statutes and specifically Mo.Rev.Stat. Section 537.020, RSMo., apply to civil rights actions brought under 42 U.S.C. Section 1983. As this case is returned to the district court for further proceedings, the parties may move to substitute the party plaintiff before the district court.