**Gary OFFET, Appellant,**

v.

**Herman SOLEM and Ben Dearduff, individually and in their official capacities, Appellees.**

**No. 90–5504.**

United States Court of Appeals, Eighth Circuit.

Submitted March 14, 1991.

Decided June 12, 1991.

Susan Jansa Brunick, Sioux Falls, S.D., for appellant.

Terry N. Predergast, Sioux Falls, S.D., for appellees.

Before WOLLMAN and BEAM, Circuit Judges, and LARSON,[*] Senior District Judge.

LARSON, Senior District Judge.

Offet appeals from the district court's[1] order dismissing his § 1983 action. We agree with the district court that defendants are entitled to qualified immunity and, accordingly, we affirm the court's judgment against him.

Because this is the second time Offet's § 1983 action has been before the Court, see *Offet v. Solem*, 823 F.2d 1256 (8th Cir.1987), we summarize the factual background only briefly. Offet was sentenced to incarceration at the South Dakota State Penitentiary in November of 1979. Pursuant to the law in effect in 1979, a prisoner who misbehaved was subject to discipline, but not to an automatic reduction of good time credits.[2] The warden and the Board of Charities and Corrections had the discretion to decide, at the time of a prisoner's hearing on parole or discharge, whether the prisoner's good time should be reduced. See S.D.Codified Laws § 24–2–18 (1979).[3]

---

[*] The HONORABLE EARL R. LARSON, Senior United States District Judge for the District of Minnesota, sitting by designation.

[1] The Honorable John B. Jones, United States District Judge for the District of South Dakota.

[2] South Dakota Codified Laws § 24–5–1 contained the formula for calculating Offet's good time credits. This statute provided:

Every convict sentenced to a term less than life, and subject to the provisions of §§ 24–2–17 and 24–2–18, shall be entitled to a deduction from his sentence for each year and pro rata for any part of a year as follows: for the first two years, a deduction of two months each year; for the third year, three months; for the fourth year and to the tenth, four months for each year; for the tenth year and for each year thereafter until the expiration of the period of the sentence as pronounced by the court, six months for each year.

[3] In 1979, South Dakota Codified Laws § 24–2–18 provided:

Prior to the time any convict's eligibility for parole or discharge shall arise ... the warden shall consider the entire record and shall recommend to the board of charities and corrections that the reduction of time for good conduct be granted or withheld in full or in part. The board shall, after hearing, fix the amount of time earned by good conduct ....

In 1981, South Dakota law changed to provide an automatic forfeiture of one day of good time credit for every day spent in punitive confinement. *See* S.D.Codified Laws § 24–2–12 (1981).[4] The law became effective July 1, 1981. After consultation with the South Dakota Attorney General's office, prison officials applied the new law to all prisoners, including Offet. Offet lost a total of 274 days of good time credit pursuant to the 1981 law as a result of disciplinary actions taken after July 1, 1981. Citing *Weaver v. Graham*, 450 U.S. 24, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981), Offet filed an action in 1986, while he was still incarcerated, claiming that the application of the 1981 law to prisoners sentenced before its effective date violated the *ex post facto* clause of the constitution.[5]

Construing the action as a petition for writ of habeas corpus, the district court initially dismissed the action without prejudice for failure to exhaust state remedies. This Court affirmed the application of the exhaustion requirement to Offet's action, but directed that the action be stayed pending exhaustion, rather than dismissed. *Offet v. Solem*, 823 F.2d 1256, 1261 (8th Cir. 1987).

Offet was released from prison in 1988 and revived his § 1983 action. On cross motions for summary judgment, the district court ruled that the application of the 1981 law to automatically reduce Offet's good time credits did not violate the *ex post facto* clause of the constitution. The court further held that even if it did, defendant prison officials were entitled to qualified immunity from Offet's request for damages.

## A. QUALIFIED IMMUNITY

■ As government officials performing discretionary functions, defendants are entitled to qualified immunity from Offet's damage action unless their conduct violated clearly established law of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *Givens v. Jones*, 900 F.2d 1229, 1231–32 (8th Cir. 1990); *Trapnell v. Ralston*, 819 F.2d 182, 184 (8th Cir.1987). To be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987); *Runge v. Dove*, 857 F.2d 469, 472 (8th Cir.1988).

Offet maintains that in the light of preexisting law, particularly the Supreme Court's decision in *Weaver v. Graham*, 450 U.S. 24, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981), it was apparent that applying the automatic deduction of good time credit to Offet in 1981 violated the *ex post facto* clause of the constitution. *Weaver* was decided by the Supreme Court on February 24, 1981, four months prior to the July 1, 1981, effective date of the challenged South Dakota law. In *Weaver*, the Supreme Court considered whether a Florida statute altering the availability of "gain time for good conduct" was unconstitutional as an *ex post facto* law when applied to a defendant whose crime was committed before the statute's enactment. *Weaver*, 450 U.S. at 25, 101 S.Ct. at 962.

The challenged Florida statute reduced the amount of credit a prisoner was enti-

---

4. Effective July 1, 1981, S.D. Codified Laws § 24–2–12 provided:

.... While under conviction for violation of [prison] rules, regulations, or policies, whether or not confined in the adjustment center, [every] convict shall automatically forfeit one day of good time granted for good conduct for each day served under such conviction. Pursuant to S.D. Codified Laws § 24–2–12.1, prisoners could "earn back" good time credits lost for bad behavior at the rate of two days per month, by remaining free of disciplinary sanction during any full calendar month succeeding

the termination of the imposed disciplinary sanction. *See* S.D. Codified Laws § 24–2–12.1 (1981).

5. The *ex post facto* prohibition in the constitution forbids the enactment of any· law "which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed." *Weaver v. Graham*, 450 U.S. 24, 28, 101 S.Ct. 960, 964, 67 L.Ed.2d 17 (1980). *See* U.S. Const., art. I, § 9, cl. 3; art. I, § 10, cl. 1.

tled to earn each year.[6] In resolving whether the statute was unconstitutional, the *Weaver* Court examined two factors: (1) was the law retrospective, that is, did it change the quantum of punishment for actions occurring before its enactment, and (2) was the law disadvantageous to the offender affected by it, that is, was it more onerous than the law in effect on the date of the offender's crime. *Id.* at 29, 33, 101 S.Ct. at 964, 966. The Court held that the Florida statute was retrospective, because the reduction in good time credits prisoners potentially could earn "substantially alter[ed] the consequences attached to a crime already completed," even though the prisoner's "good conduct" occurred after the law's effective date. *Id.* at 31–33, 101 S.Ct. at 965–967. Finding that the reduction also disadvantaged prisoners by lengthening the time they spent in prison, the Court concluded the law violated the *ex post facto* clause when applied to prisoners whose crime was committed before the law was changed. *Id.* at 33–34, 36, 101 S.Ct. at 966–967, 968.

The South Dakota statute at issue in this case did not change the amount of good time credits prisoners could earn for good behavior, but it did change the way good time credits would be taken away. Under the law in effect when Offet was sentenced, bad behavior did not automatically reduce good time credits. Under the challenged law, an automatic reduction occurred. Offet maintains that *Weaver* controls the outcome of his *ex post facto* challenge, and that application of South Dakota's 1981 law to him violated the *ex post facto* clause. Defendants argue the differences between South Dakota's law and the Florida statute at issue in *Weaver* at least make the application of *Weaver* a debatable issue, and that they are thus entitled to

qualified immunity from Offet's § 1983 action.

1. Was the unlawfulness of applying South Dakota's 1981 law to prisoners such as Offet clearly established when defendants acted?

We agree with defendants that if the application of *Weaver* to the facts of this case is debatable, they are entitled to qualified immunity. *See Tyler v. Barton,* 901 F.2d 689, 691 (8th Cir.1990). Government officials are not required to guess, at their peril, the future development of constitutional doctrine. *Johnson v. Hay,* 931 F.2d 456, 460 (8th Cir.1991). *See Mitchell v. Forsyth,* 472 U.S. 511, 535 & n. 12, 105 S.Ct. 2806, 2820 & n. 12, 86 L.Ed.2d 411 (1985). This is not to say, however, that an official action is protected by qualified immunity unless the very action in question has been held unlawful. *Anderson,* 483 U.S. at 640, 107 S.Ct. at 3039; *Johnson,* at 461; *Coffman v. Trickey,* 884 F.2d 1057, 1063 (8th Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 1523, 108 L.Ed.2d 763 (1990). An action violates clearly established law when, in view of the pre-existing law, the unlawfulness of the action is apparent. *Anderson,* 483 U.S. at 640, 107 S.Ct. at 3039; *Coffman,* 884 F.2d at 1063.

Offet argues the unlawfulness of defendants' action in this case was apparent, and he cites numerous federal appellate and district court decisions which have found *Weaver* controlling when a state has attempted to apply changes to a good time credit or similar law to prisoners whose crimes had been committed prior to the changes. *See, e.g., Fender v. Thompson,* 883 F.2d 303 (4th Cir.1989); *Knuck v. Wainwright,* 759 F.2d 856 (11th Cir.1985); *Beebe v. Phelps,* 650 F.2d 774 (5th Cir. 1981); *Piper v. Perrin,* 560 F.Supp. 253

---

**6.** The statute in effect when the plaintiff in *Weaver* committed his crime and was sentenced required authorities to deduct as gain time for good conduct: (a) five days per month off the first and second years of the sentence; (b) ten days per month off the third and fourth years of the sentence; and (c) fifteen days per month off the fifth and all succeeding years of the sentence.

The new, challenged statute provided only (a) three days per month off for the first and second years of the sentence; (b) six days off per month for third and fourth years of the sentence; and (c) nine days off per month for the fifth and all succeeding years of the sentence. *See Weaver,* 450 U.S. at 26, 101 S.Ct. at 962.

(D.N.H.1983); *Spradling v. Maynard,* 527 F.Supp. 398 (W.D.Okla.1981).

Defendants, on the other hand, cite a California Supreme Court decision distinguishing *Weaver* and upholding a statute very similar to the one at issue here. *In re Ramirez,* 39 Cal.3d 931, 218 Cal.Rptr. 324, 705 P.2d 897 (1985), *cert. denied,* 476 U.S. 1152, 106 S.Ct. 2266, 90 L.Ed.2d 711 (1986).[7] The district court relied exclusively on *Ramirez* in holding that "[t]here is a critical difference between a diminution of the ordinary rewards for satisfactory performance of a prison sentence—the issue in *Weaver*—and an increase in sanctions for *future misbehavior* in prison—which is at issue here." *See Ramirez,* 218 Cal.Rptr. at 328, 705 P.2d at 901.

Offet criticizes the distinction drawn by the *Ramirez* court, citing the Supreme Court's pronouncement in *Weaver* that a law may be retrospective, and hence a violation of the constitution's *ex post facto* prohibition,

> not only if it alters the length of the sentence, but also if it changes the maximum sentence from *discretionary to mandatory.* ... The critical question ... is whether the new provision imposes greater punishment after the commission of the offense.

*Weaver,* 450 U.S. at 32 n. 17, 101 S.Ct. at 966 n. 17 (emphasis supplied). Offet maintains that the mandatory reduction of good time credits *does* impose greater punishment for the crime he committed prior to 1981, that *Ramirez* is contrary to the weight of federal authority on this issue, and that defendants should not be allowed to rely on a decision rendered by a state court four years after they acted to defeat his claim for damages.

We agree with Offet that the issue, for purposes of determining whether defen-

dants are entitled to qualified immunity, is whether, at the time defendants acted, it was "apparent" that the holding in *Weaver* would apply to the facts before them. We cannot agree, however, with Offet's contention that subsequent court decisions interpreting *Weaver* are irrelevant to this determination. The difference in views among the courts which have applied *Weaver* suggests that its application in this case was not so apparent that the law can be said to have been "clearly established" at the time defendants acted. *See Givens,* 900 F.2d at 1233 (facts of pre-existing caselaw distinguishable). *Cf. Runge,* 857 F.2d at 473 (pre-existing caselaw provides clear rule; no significant factual differences).

We note that in 1990, the South Dakota legislature again amended the law to return to the discretionary method of reducing a prisoner's good time credits.[8] In view of this change, and because we hold defendants are entitled to qualified immunity, we decline to reach the question of whether the mandatory reduction in good time credits in fact violated the prohibition against *ex post facto* laws.

## B. CONCLUSION

Because we agree with the district court that the unlawfulness of defendants' actions was not apparent at the time they acted, we affirm the court's judgment dismissing plaintiff's § 1983 action on the grounds that defendants are entitled to qualified immunity.

---

**7.** Defendants also note that a South Dakota state circuit court found no *ex post facto* violation in the application of the 1981 law to all prisoners, although defendants concede this decision was later vacated by the South Dakota Supreme Court on jurisdictional grounds. *See Tibbetts v. State,* 336 N.W.2d 658 (S.D.1983).

**8.** South Dakota Codified Laws § 24–2–12 now provides:

The disciplinary board, established by rules promulgated by the department of corrections, may take away time granted for good conduct ... for violating any of the rules or policies of the department of corrections, following a hearing and subject to the approval of the warden or the superintendent.