**Michael D. RIPSON, Plaintiff–Appellee,**

**v.**

**John K. ALLES, Defendant–Appellant,**

**Clyde Klave, City of Winterset Police Department, Defendants.**

**Michael D. RIPSON, Plaintiff–Appellee,**

**v.**

**John K. ALLES, Defendant,**

**Clyde Klave, Defendant–Appellant,**

**City of Winterset Police Department, Defendant.**

**Nos. 93–1972, 93–1974.**

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 14, 1993.

Decided April 11, 1994.

Rehearing Denied June 1, 1994 in No. 93–1972.

**806**

Henry A. Harmon, Des Moines, IA, argued, for appellant.

Philip H. Dorff, Des Moines, IA, argued, for appellee.

Before WOLLMAN, Circuit Judge, HEANEY, Senior Circuit Judge, and LOKEN, Circuit Judge.

WOLLMAN, Circuit Judge.

Michael D. Ripson filed suit against police officers John K. Alles and Clyde Klave under 42 U.S.C. § 1983, alleging violations of his constitutional rights resulting from an alleged unlawful arrest and subsequent imprisonment. Alles and Klave sought summary judgment based on qualified immunity. The district court determined that genuine issues of material fact existed and denied their motions. We affirm in part, reverse in part, and remand for further proceedings.

## I. BACKGROUND

On March 21, 1991, Michael Ripson's estranged wife, Melody, contacted the City of Winterset police department to complain that Ripson was sexually abusing their two-year-old daughter. Melody told Assistant Police Chief Alles that several times after visits with Ripson the child had shown signs of redness on her vagina and rectum and had stated "Daddy hurt me" and, when asked where, had answered "my bottom." Alles advised Melody to have a doctor examine her daughter and to furnish him with the medical reports. Melody told Alles that a physician's assistant at Madison County Medical Associates had examined the girl and had acknowledged that there were suspicious conditions that should be reported to Child Protection Services.

Medical notes from Madison County Medical Associates indicate that a physician's assistant examined the girl on March 20, 1991. Melody told him that her daughter had complained of her father hurting her in her vaginal area. The child was relaxed and had no guarding or resistance to the exam. The physician's assistant observed no lesion, redness, or evidence of physical trauma, but notified Child Protective Services and made an appointment for the girl to see Dr. Rizwan Shah. On March 26, 1991, Dr. Shah conducted a sexual assault validation exam on the child. Melody told the doctor that she and Ripson were fighting over custody of their daughter. She stated that after her daughter returned from visits with Ripson she had a reddened genital area and suffered from nightmares. Melody also informed the doctor that Child Protective Services had been contacted but that it would not investigate without documented medical evidence of sexual abuse. The examination revealed no physical evidence of sexual injuries. Because of Melody's reports concerning her daughter's abnormal behavior after visits with her father, Dr. Shah referred the daughter to a psychologist.

After an initial interview on April 4, 1991, the psychologist reported that "[s]ince all of the information obtained was given by [Melody], it [was] difficult to know what [was] actually happening to [the child]." He rec-

ommended that Melody seek a court-ordered custody evaluation. He stated that he did not believe that anyone Melody had consulted thus far had found any unequivocal evidence of sexual abuse and that it appeared that a different approach was needed if the question was ever to be put to rest.

According to Ripson, he spoke to Alles in late March or early April and requested that a police officer accompany him to Melody's residence in order to witness her denial of his visitation rights. During this conversation, Alles informed Ripson that his daughter had been examined by doctors and that she was "okay or fine." As the conversation continued, Alles became hostile and threatened to throw Ripson in jail if he attempted to contact Melody or his daughter in any way.

On April 10, 1992, Alles met with the Madison County Attorney, A. Zane Blessum. Alles told Blessum that he was investigating a potential sexual abuse case and asked Blessum to view a video tape prepared by Melody. After viewing the tape, Blessum told Alles to "keep investigating" and suggested the child be examined by Dr. Shah. According to Blessum, "the desired normal procedure or protocol before making an arrest for an alleged sexual assault in Madison County is to determine whether or not any physical evidence exists of the alleged abuse." Police Chief Klave may have been present during this meeting.

The following day, Alles interviewed Jeff Clutter, Melody's live-in boyfriend. Klave was present during the interview. Clutter stated that he had heard the child on several occasions say "Daddy hurts me" and, when asked how, she would point her finger and say "finger" and "bottom." Later that afternoon, Alles arrested Ripson when he came to Melody's home to pick up his daughter. Klave, who had advised Alles to use his own judgment regarding the arrest, was not aware Alles had arrested Ripson until after Ripson was in custody. Klave subsequently

notarized the complaint and affidavit, prepared by Alles following the arrest, which charged Ripson with sexual abuse in the second degree. In the affidavit, Alles attested to the following facts "known to [him] or told to [him] by other reliable persons" which formed the basis for his belief that Ripson committed the crime:

> [The child] has shown signs on both her vagina and rectal area of abuse. She has told several people including her mother that daddy hurts her. She will hold one finger away from the rest and say Daddy hurts me and when asked how states "finger-bottom" or "finger-fanny."

Madison County Attorney Blessum was "surprised to learn that Mr. Ripson had, in fact, been arrested by [his] officers, approximately 12 hours after [he] informed them to 'keep investigating.'" In a supplemental affidavit, Blessum explained that he did not tell Alles and Klave that probable cause did not exist for an arrest and that he told them to "keep investigating" in order to develop a better case for prosecution.

Ripson appeared before the Madison County Magistrate Judge on April 11, 1991. He did not challenge the judge's probable cause determination. The next day, he posted bond and his counsel appeared before the court and waived a preliminary hearing. On June 25, 1991, the court dismissed the charges upon application by the Madison County Attorney. This suit followed.

Ripson's complaint included the Section 1983 claim, as well as pendent state claims. Following some discovery, defendants moved for summary judgment on the Section 1983 claim based on qualified immunity.[1] The district court denied defendants' motions, finding issues of material fact with respect to this claim.

## II. DISCUSSION

█ The Fourth Amendment requires that an officer have probable cause for an arrest.

---

1. Alles and Klave also moved for summary judgment on the pendent state claims. The district court denied summary judgment on the false arrest and false imprisonment claims and granted summary judgment on the intentional infliction of emotional distress and defamation claims.

The City of Winterset, an original named defendant in this suit, also moved for summary judgment. The district court granted the city's motion seeking dismissal from the suit. These decisions of the district court are not before us.

The arresting officer is entitled to qualified immunity, however, if the arrest was objectively reasonable—if a reasonable officer could have believed probable cause existed for the arrest. *Hunter v. Bryant*, —— U.S. ——, ——, 112 S.Ct. 534, 537, 116 L.Ed.2d 589 (1991). Probable cause existed in the present case if, at the moment Alles arrested Ripson, the facts and circumstances within Alles's knowledge and of which he had reasonably trustworthy information were sufficient to warrant a prudent person in believing Ripson had sexually abused his daughter. *See id.*

■ "Whether an official's conduct was objectively reasonable is a question of law and should be decided at the earliest possible stage of litigation." *Gorra v. Hanson*, 880 F.2d 95, 97 (8th Cir.1989) (citation omitted). If a plaintiff fails to assert a constitutional violation under the law as currently interpreted or if the actions that the plaintiff alleges the defendant to have taken are actions that a reasonable officer could have believed lawful, the defendant is entitled to dismissal prior to discovery. *See Siegert v. Gilley*, 500 U.S. 226, 231–32, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991); *Anderson v. Creighton*, 483 U.S. 635, 646 n. 6, 107 S.Ct. 3034, 3042 n. 6, 97 L.Ed.2d 523 (1987). Ripson's complaint sufficiently alleged a Fourth Amendment violation and actions by Alles "that a reasonable officer could [not] have believed lawful." *Id.*

Further, the defendant is entitled to summary judgment if the record, when viewed in the light most favorable to the plaintiff, the non-moving party, reveals that there is no genuine issue as to any material fact regarding the immunity issue *and* that the defendant is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Johnson v. Hay*, 931 F.2d 456, 460 (8th Cir.1991). We review the district court's denial of summary judgment de novo. *Id.*

■ In his motion for summary judgment, Alles asserted that he arrested Ripson based upon Melody's allegations and her live-in boyfriend's corroboration of those allegations and that an objectively reasonable officer would consider this information sufficient to establish probable cause. In response, Ripson asserted that, at the time of the arrest, Alles knew the following additional facts: that there was no medical evidence of abuse; that Ripson and Melody were involved in a custody dispute over their daughter; and that the Madison County Attorney had recently advised Alles to "keep investigating." Ripson argued that these additional facts detracted from a finding of probable cause and that, based on all of the facts known to Alles, no objectively reasonable officer would have arrested him. In reply, Alles did not challenge any of Ripson's factual assertions. Rather, he argued to the district court, and argues to this court, that the facts that he alleged in his motion were sufficient to establish probable cause.[2]

Because Alles did not dispute Ripson's factual assertions in his reply, we disagree with the district court that there were genuine issues of material fact regarding the immunity issue. Further, as the parties did not argue that resolution of the immunity issue required additional discovery, we conclude that the district court should have decided the issue as a matter of law. *See Gorra*, 880 F.2d at 97. We hold that on this record Alles is not entitled to the defense of qualified immunity. Based on all of the facts and circumstances within Alles's knowledge and of which he had reasonably trustworthy information at the time of the arrest, a reasonable officer could not have believed probable cause existed for the arrest of Ripson for sexually abusing his daughter.

■ We conclude that Klave was entitled to summary judgment. Klave was not personally or directly involved in the alleged constitutional violation against Ripson: he did not investigate the claims of Melody Rip-

---

2. Alles also argues that probable cause was "legally established on April 11, 1991, when [Ripson] appeared before the Madison County Magistrate Judge." The magistrate judge based his probable cause determination upon the offense report prepared by Alles. "If police officers have

been instrumental in the plaintiff's continued confinement or prosecution, they cannot escape liability by pointing to the decisions of prosecutors or grand jurors or magistrates to confine or prosecute him." *Jones v. City of Chicago*, 856 F.2d 985, 994 (7th Cir.1988).

son and he was not present at the arrest. Klave attested that he told Alles to use his judgment regarding the arrest and was not aware that Alles had arrested Ripson until after Ripson was in custody. Ripson offers nothing to dispute these facts. Klave's act of signing and notarizing the complaint after the arrest was insufficient to establish a connection between Klave and the alleged deprivation of Ripson's constitutional rights. *See Vukadinovich v. Zentz,* 995 F.2d 750, 756 (7th Cir.1993).

■ Ripson also argues that Klave is liable in his capacity as Alles's supervisor. "[F]or a supervisor to be held liable for the acts of a subordinate, something more must be shown than merely the existence of the supervisor-subordinate relationship." *Clay v. Conlee,* 815 F.2d 1164, 1170 (8th Cir.1987). In addition, mere negligence in failing to detect and prevent a subordinate's conduct is not enough for liability under Section 1983. *Jones v. City of Chicago,* 856 F.2d 985, 992 (7th Cir.1988). "The supervisor must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what [he] might see." *Id.* With respect to Klave's role in Ripson's arrest, the record does not contain any evidence to support the imposition of supervisory liability upon Klave.

We reverse the district court's denial of summary judgment as to defendant Klave, affirm the district court's denial of summary judgment as to defendant Alles, and remand the case to the district court for further proceedings consistent with this opinion.