**Benjamin and Amy ROOT, individually and as Next friends of Elizabeth Root, a minor, Plaintiffs,**

v.

**LIBERTY EMERGENCY PHYSICIANS, INC., et al., Defendants.**

**No. 98–1233–CV–SJ–1.**

United States District Court, W.D. Missouri, St. Joseph Division.

Oct. 27, 1999.

Kenneth E. Siemens, Watkins, Boulware, Lucas, Miner, Murphy & Taylor, St. Joseph, MO, for plaintiffs.

Liberty Emergency Physicians, William Dirk Vandever, Kansas City, MO, Jayson A. Ford, Kelly L. McClelland, McClelland Law Firm, Liberty, MO, for defendants.

## ORDER

WHIPPLE, District Judge.

Pending before the Court are Defendant New Liberty Hospital District's ("Liberty Hospital") Motion to Stay Proceedings Pending Appeal and Motion To Quash Notice of Deposition. The Court finds that Liberty Hospital's filing of a Notice of Appeal divests this Court of jurisdiction over any issues on appeal. Although Liberty Hospital is only one Defendant in this multi-defendant action, and the issue of sovereign immunity constitutes only a small part of the case, the Court will stay all proceedings pending the outcome of Liberty Hospital's appeal.

## I. BACKGROUND

Plaintiffs claim that Liberty Hospital's mistreatment of Plaintiff Amy Root caused her infant daughter Elizabeth Root to suffer severe brain damage. Amy Root ("Root"), an insulin-dependent diabetic who was thirty-one weeks pregnant, arrived at Liberty Hospital on November 30, 1996 seeking treatment for nausea, dehydration, and vomiting. Root alleges that Liberty Hospital's emergency staff never screened her for the onset of diabetic ketoacidosis, despite the fact that she exhibited classic warning signs. Root also alleges that Liberty Hospital released her without first stabilizing her condition. Within thirty hours of her release, Root arrived at St. Luke's Hospital in a severe diabetic ketoacidosis state. She immediately delivered her daughter, Elizabeth Root, by emergency cesarean section. Elizabeth Root is severely brain-damaged. Plaintiffs allege that Defendants' actions and inaction caused Elizabeth Root's brain damage.

Particularly relevant to the pending motion is Plaintiffs' claim against Liberty Hospital for violation of the Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C. § 1395dd *et seq.* EMTALA requires that hospitals conduct appropriate screening of patients brought into the emergency room, and prohibits hospitals from transferring patients with unstable medical conditions. *See* 42 U.S.C. § 1395dd(a)–(b). EMTALA explicitly creates a private right of action for damages against hospitals that have injured patients by failing to fulfill these requirements.[1] To determine the measure of damages available for a violation of EM-

---

1. Section 1395dd(d)(2)(A) of Title 42, United States Code provides that "[a]ny individual who suffers personal harm as a direct result of a participating hospital's violation of a requirement of this section may, in a civil ac-tion against the participating hospital, obtain those damages available for personal injury under the law of the State in which the hospital is located, and such equitable relief as is appropriate."

TALA, courts must look to the personal injury laws of the state where the hospital is located. *See id.*

Liberty Hospital moved the Court for an Order dismissing Plaintiff's complaint, claiming sovereign immunity under Mo. Rev.Stat. § 537.600. Section 537.600 grants the State of Missouri and its political subdivisions sovereign or governmental tort immunity from claims of liability under state law. This Court denied Liberty Hospital's Motion to Dismiss, finding that EMTALA preempted § 537.600. *See Root v. Liberty Emergency Physicians, Inc.*, No. 98–1233 (W.D.Mo. June 22, 1999). Liberty Hospital appealed the Court's denial of sovereign immunity and requests that this Court stay its Order and proceedings pending appeal.

## II. LEGAL STANDARD

■ Generally, the filing of a Notice of Appeal confers jurisdiction in the appellate court over all matters appealed. It also divests the district court of jurisdiction over any aspects of the case relating to the appeal. *See Johnson v. Hay*, 931 F.2d 456, 459 (8th Cir.1991). Many district courts, faced with a similar appeal and motion to stay after having denied immunity, determine that a stay of *all* proceedings is required pending the outcome of appeal. *See Jones v. Clinton*, 879 F.Supp. 86, 87 (E.D.Ark.1995) (stating that "[a]n appeal from a denial of official immunity requires a stay of all proceedings pending resolution of the appeal."); *see also Dickerson v. McClellan*, 1994 WL 577519, at *1 (6th Cir.1994) (stating that "[b]ecause an order denying qualified immunity is immediately appealable, it follows that in most cases a stay of the trial

---

2. Plaintiff correctly notes that the cases cited by Liberty Hospital, in support of its argument that a denial of sovereign immunity is immediately appealable, actually discuss the immediate appealability of denials of *qualified* immunity. *See e.g., Otey v. Marshall*, 121 F.3d 1150, 1154 (8th Cir.1997) (holding that a denial of summary judgment based on qualified immunity defense is immediately appealable.)

---

proceedings may be necessary to preserve the issue.") Only when a party's appeal is "utterly lacking in merit," and made for the purpose of delay, may the district court proceed with trial. *See Johnson*, 931 F.2d at 459. In order to determine if the proceedings in this case must be stayed pending appeal, this Court must first determine if the appellate court has jurisdiction over Liberty Hospital's appeal, and then determine if Liberty Hospital's appeal is "utterly lacking in merit."

## III. DISCUSSION

### A. Appellate Court's Jurisdiction Over Liberty Hospital's Appeal

■ Plaintiffs argue that Liberty Hospital's appeal will be dismissed for lack of jurisdiction. Specifically, Plaintiffs focus on procedural defects in Liberty Hospital's appeal. Unlike denials of qualified immunity, which are immediately appealable, Plaintiffs argue that Liberty Hospital's appeal of this Court's denial of sovereign immunity is interlocutory.[2] Plaintiffs argue that Liberty Hospital failed to follow certain procedures necessary to secure the appellate court's jurisdiction over an interlocutory appeal. Specifically, Plaintiffs contend that Liberty Hospital failed to obtain this Court's certification that its Order was appealable. *See* 28 U.S.C. § 1292(b) (requiring a district court to certify that its ruling is immediately appealable). The Court, however, finds that Liberty Hospital has an immediate right to appeal the denial of sovereign immunity.

■ A district court decision is immediately appealable if it falls under the collateral order exception to the final judgment rule.[3] Decisions falling within

---

3. The collateral order exception permits a party to appeal a court's ruling, even though that ruling may not be the last order in a case. *See Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546, 69 S.Ct. 1221, 1225, 93 L.Ed. 1528. Decisions falling under the exception are usually said to be within "that small class which ... [are] too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is ajudicated." *Id.*

the collateral order exception are considered final for purposes of appeal. Appellate courts have jurisdiction to hear appeals of all final decisions, regardless of whether a district court certifies the appeal. *See* 28 U.S.C. § 1291 (1994). A district court's denial of constitutionally-based immunities, such as qualified or Eleventh Amendment immunity, almost always fall under the collateral order exception because "the essence of absolute immunity is its possessor's entitlement not to have to answer for his conduct in a civil damages action." *Mitchell v. Forsyth*, 472 U.S. 511, 525, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985). When the source of immunity is a state statute or state common law, however, the analysis is slightly more complex, as some states grant immunity from liability rather than immunity from suit. *See Griesel v. Hamlin*, 963 F.2d 338, 339–40 (11th Cir.1992). When a state statute grants a party immunity from suit the denial of such immunity is immediately appealable. *See id.* (stating that a denial of state-based sovereign immunity granting immunity from suit falls within the collateral order doctrine). Section 537.600 grants the State of Missouri and its subdivisions immunity from suit. *See Aiello v. St. Louis Community College*, 830 S.W.2d 556, 558 (Mo.Ct.App. 1992) (stating that § 537.600 gives immunity from suit). Accordingly, Liberty Hospital is entitled to an immediate appeal of this Court's denial of sovereign immunity. Because the Eighth Circuit has jurisdiction over Liberty Hospital's appeal, this Court is divested of jurisdiction and should not proceed with trial unless the appeal is "utterly lacking" in merit.

**B. Merits of Liberty Hospital's Appeal**

■ In its Order of June 22, 1999, this Court found that Mo.Rev.Stat. § 537.600, which grants the State of Missouri and its political subdivisions tort immunity from claims of liability under state law, is in direct conflict with EMTALA, a federal statute creating a cause of action against hospitals that violate the statute's provi-

sions. To that end, the Court held that EMTALA preempted § 537.600 and that Liberty Hospital was therefore not immune from suit. Liberty Hospital argued in its Motion to Dismiss that there is no conflict between EMTALA and § 537.600 because EMTALA directly references state law in its civil cause of action provision and expressly states that the statute was not intended to preempt any state law. To determine if Liberty Hospital's appeal has any merit, the Court must reconsider its analysis of this issue.

**1. EMTALA's Preemption of Rev. Mo.Stat. § 537.600**

■ A federal statute preempts state law when the federal law is intended to occupy a field of law exclusively, or when state law conflicts with a federal statute. *See Freightliner Corp. v. Myrick*, 514 U.S. 280, 288, 115 S.Ct. 1483, 1487, 131 L.Ed.2d 385 (1995). Courts must consider Congressional intent when determining whether a federal statute occupies a field or conflicts with state law. *See Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133. 137–38, 111 S.Ct. 478, 482, 112 L.Ed.2d 474 (1990). Congressional intent is usually ascertained by considering the statute's explicit language as well as its purpose and history. *See id.*

**(a) EMTALA's Private Cause of Action for Patient Dumping**

■ EMTALA states that hospitals containing emergency departments must provide all individuals requesting treatment at their emergency rooms "an appropriate medical screening examination within the capability of the hospital's emergency department to determine whether or not an emergency medical condition ... exists." 42 U.S.C. § 1395dd(a). EMTALA also requires that hospital emergency rooms provide to individuals with emergency medical conditions "such treatment as may be required to stabilize the medical condition" or "[a] transfer of the individual to another medical facility

in accordance with subsection (c) of· this section." *Id.* at § 1395dd(b) (subsection (c) of EMTALA requires that hospitals restrict transfers until the patient is stabilized). As discussed previously, EMTALA also provides individuals injured by a hospital's violation of subsections (a) and (b) a private right of action against the hospital. *See* 42 U.S.C. § 1395dd(d)(2)(A). This plain language shows that Congress intended to deter patient dumping. EMTALA's legislative history bolsters this reading of the statute.

At the time Congress enacted EMTALA, "patient dumping" was a rapidly growing practice in private hospitals. *See* Correa v. Hospital San Francisco, 69 F.3d 1184, 1189 (1st Cir.1995) (citing H.R.REP. No. 241 (1986), *reprinted in* 1986 U.S.C.C.A.N. 726–27). Patient dumping describes a hospital's practice of dismissing or transferring unstable patients who arrive at emergency rooms with inadequate insurance. Under many state medical malpractice schemes, individuals injured as a result of "patient dumping" have no actionable claim against the offending hospital because such statutes do not proscribe liability for a hospital's fail̦ure to treat. *See Bryan v. Rectors and Visitors of Univ. of Va.,* 95 F.3d 349, 351 (4th Cir.1996) Congress set about to reach its goal of deterring patient dumping by including a private cause of action under federal law that allows a means of recovery for persons injured by a hospital's patient dumping. *See id.* (noting that EMTALA's purpose is "to get patients into the system who might otherwise go untreated and be left without a remedy because traditional medical malpractice law affords no claim for failure to treat.").

In EMTALA's section providing individuals a private cause of action, it references state law: "[a]ny individual who suffers personal harm ... may ... obtain those damages available for personal injury under the law of the State in which the hospital is located...." 42 U.S.C. § 1395dd(d)(2)(A). While Congress clearly wanted to deter patient dumping, it also was conscious of this country's medical malpractice crisis. Congress was especially concerned that enacting an 'unbridled' EMTALA could create an undue burden on hospitals and ultimately decrease the availability of emergency care. See H.R.REP. No. 241(I), at 27 (1986), *reprinted in* 1986 U.S.C.C.A.N. 42, 726–29, Congress, therefore, references state law in EMTALA's civil recovery section so that state medical malpractice and personal injury damage caps would help prevent EMTALA from further exacerbating the medical malpractice crisis. *See Hardy v. New York City Health & Hosp. Corp.,* 164 F.3d 789, 793 (2d Cir.1999) (noting, while considering whether a state notice provision applied, that even a narrow reading of EMTALA clearly references the type and amount of damages available under state law.) With this reference to state law, EMTALA has been described as a "gap-filler" for state malpractice law, giving patients who would otherwise have no claim in state court a forum to redress their injuries. *See id.*

Congress's intent is readily ascertained from EMTALA's plain language and bolstered by its legislative history: EMTALA explicitly creates a federal cause of action to individuals "dumped" by hospitals to. recover for injuries they suffer as a result of the hospital's refusal to treat. To the extent that a state sovereign immunity statute completely nullifies any possibility of recovery under EMTALA, the statute directly conflicts with EMTALA. Liberty Hospital argues that § 537.600 disallows any possibility of suit against a state or county hospital under EMTALA. Consequently, EMTALA and § 537.600 conflict.

**(b) EMTALA's Anti–Preemption Section.**

EMTALA contains a provision stating that it does not preempt any state law requirement "except to the extent the requirement directly conflicts with a requirement of [EMTALA]."42 U.S.C. § 1395dd(f). Liberty Hospital argues that this express anti-preemption provision pre-

vents it from preempting § 537.600 because no direct conflict exists. Liberty Hospital argues that there is only a possibility—and not a requirement—of civil damages under EMTALA, and as a result no conflict between the two statutes.

EMTALA states "[a]ny individual who suffers personal harm as a direct result of a participating hospital's violation of a requirement of this section may ... obtain damages...." 42 U.S.C. § 1395dd(d)(2)(A). Although "may" is not always considered mandatory language, EMTALA's purpose and legislative history imply that Congress envisioned creating a remedy that could not be eliminated. According to Liberty Hospital, § 537.600 completely eliminates EMTALA's remedy in this case. The Court cannot envision a more direct conflict. Therefore, if Liberty Hospital's sovereign immunity argument is accepted, then § 537.600 directly conflicts with EMTALA and is preempted.

### 2. Inapplicability of § 537.600

Liberty Hospital argues that because EMTALA refers to state law for the measure of damages available, it does not directly conflict with § 537.600. If Liberty Hospital is correct in this analysis, then § 537.600 is not even implicated and the Court's denial of sovereign immunity is still proper. Because a state sovereign immunity statute like § 537.600 only entitles entities and political subdivisions to immunity from suit under state and not federal law, Liberty Hospital is not entitled to dismissal from this suit. EMTALA's reference to state law merely affects the measure of damages available for violation of the federal statute, it does not transform the federal cause of action into a "state law" subject to state sovereign immunity provisions.

Thus, perhaps Liberty Hospital is correct—EMTALA and § 537.600 do not conflict because § 537.600 is never implicated. EMTALA refers to the personal injury damages available under state law. In Missouri, damages for the instant action would likely be determined by reference to Mo.Rev.Stat. § 538.210, which provides:

"[i]n any action against a health care provider for damages for personal injury or death arising out of the rendering of or failure to render health care services, no plaintiff shall recover more that [$350,000] per occurrence for noneconomic damages from any one defendant...." Accordingly, EMTALA references § 538.210. It does not implicate the Missouri sovereign immunity statute, which only applies to claims of liability under state law, and no conflict ever arises. The outcome, however, remains the same: Liberty Hospital can not claim sovereign immunity in this suit.

From the two analyses set forth above, the Court recognizes that Liberty Hospital's claim of sovereign immunity is subject to differing interpretations: in one, § 537.600 is preempted by EMTALA, in another, the sovereign immunity statute is never implicated. Because the issue is subject to multiple determinations, the Court believes that Liberty Hospital's appeal is not "utterly lacking in merit," even if it chances of success on appeal are marginal.

## III. CONCLUSION

In the interest of judicial economy, and in order to prevent further prejudicing the Plaintiff, this Court will stay all proceedings in this case pending the outcome of Liberty Hospital's appeal. Liberty Hospital's motions for a stay pending appeal and to quash notice of deposition are GRANTED.

IT IS SO ORDERED.