**Melvin Eugene DUCKWORTH, Plaintiff–Appellee,**

v.

**John H. FORD, Defendant–Appellant.**

**Richard C. Rice, Defendant.**

**No. 92–3658.**

United States Court of Appeals, Eighth Circuit.

Submitted April 14, 1993.

Decided June 15, 1993.

Before McMILLIAN, Circuit Judge, HENLEY,* Senior Circuit Judge, and BEAM, Circuit Judge.

McMILLIAN, Circuit Judge.

John H. Ford appeals from an order entered in the United States District Court for the Western District of Missouri,[1] denying his motion for summary judgment based on qualified immunity. *Duckworth v. Ford,* No. 90–4318–CV–C–9 slip op. at 7, 1992 WL 515340 (W.D.Mo. Oct. 19, 1992) (*Duckworth*). For reversal, Ford argues the district court erred in denying summary judgment based on qualified immunity because the alleged action neither violated any clearly established law regarding a constitutional right, nor constituted "adverse employment law." We affirm the order of the district court.

In 1988, two individuals became rivals for the position of superintendent of the Missouri State Highway Patrol. The governor appoints the superintendent. Richard C. Rice, then Director of the State Department of Public Safety, interviewed Ford and Lt. Col. C.E. Fisher. After Rice recommended Ford for the position, the governor appointed him as superintendent.

After his promotion to headquarters, but before he was named superintendent, Ford had a patrol communications officer periodically "sweep" his office for electronic surveillance devices. On May 17, 1988, the officer found a "device" in Ford's telephone, but he did not know what it was. Ford surmised the device could have come from the patrol's Division of Drug and Crime Control (DDCC), the only patrol division with wiretapping equipment. Appellee Melvin E. Duckworth was the officer in charge of DDCC. Ford told some of his friends about the discovery of the device and eventually told the superintendent. The superintendent had a patrol expert look at the device; the expert determined the device was a "click suppressor," that is, a piece of telephone equipment that

Michael L. Boicourt, Asst. Atty. Gen., Jefferson City, MO, argued, for appellant.

J. Christopher Spangler, Sedalia, MO, argued, for appellee.

---

* Judge Henley agreed in conference with the result in this case, but became ill and was unable to participate further before the filing of the opinion.

1. The Honorable D. Brook Bartlett, United States District Judge for the Western District of Missouri.

suppressed line noise, and not a monitoring or listening device.

About a month after Ford's appointment as superintendent was announced, Duckworth heard "rumors" that he and Fisher had illegally wiretapped Ford's telephone and were "in trouble." Duckworth confronted Ford about the rumors and Ford denied having heard anything about it. Duckworth then contacted the superintendent who also said he had not heard any rumors, but explained that Ford had found a device on his telephone and that the device had been checked out and was nothing. Duckworth talked to Rice about the rumors as well, and Rice said he had not heard any rumors. Duckworth requested an FBI investigation.

In mid-July 1988, the acting superintendent called a senior staff meeting for all five majors including Fisher, Ford and Duckworth. The superintendent explained that a "sweep" had been conducted on Ford's office and a device had been discovered and that the device in question was determined to be a "click suppressor." Fisher and Duckworth wanted an FBI investigation and the device was sent to the FBI office in Kansas City. The FBI reported the device was a "click suppressor."

Duckworth continued in the same position with no change in duties after Ford became superintendent. However, Duckworth became increasingly preoccupied with the rumors accusing him and Fisher of illegal wiretapping of Ford's telephone; his physical health deteriorated and he became severely depressed. As superintendent, Ford never took any action to clear Fisher or Duckworth of the rumors that they had illegally wiretapped his telephone. In November 1988, Duckworth suffered a heart attack and eventually retired from the patrol in May 1990.

Duckworth subsequently filed this civil rights action in federal district court against Ford and Rice, alleging in count I that Ford and Rice had violated his first amendment rights by retaliating against him for supporting Fisher for the superintendent position and that this retaliatory conduct caused his constructive discharge. In count II Duckworth alleged that Ford and Rice had conspired to retaliate against him and to deprive him of liberty and property interests without due process; in count III Duckworth sought punitive damages for these violations. In counts IV and V Duckworth asserted pendent state claims for negligent infliction of emotional distress and "outrageous conduct."

Ford and Rice filed motions to dismiss the retaliation and conspiracy claims for failure to state a claim upon which relief can be granted and alternatively for summary judgment on the ground that they were entitled to qualified immunity. Duckworth filed a motion for summary judgment as well.

Ford and Rice first argued that the first amendment retaliation claim was really only a state law defamation claim because Duckworth's alleged damages flowed solely from injury to his reputation. The district court analyzed the claim in terms of protected speech and concluded that Duckworth's claim was not simply that Ford had defamed him, but that Ford had done so in retaliation for his political support of Fisher. *Duckworth,* slip op. at 7. The district court accordingly denied the motion to dismiss for failure to state a claim with respect to Ford. *Id.* at 10.

The district court dismissed pendent state claims against Rice for lack of jurisdiction after granting summary judgment in favor of Rice only on the retaliation claim and dismissing the civil conspiracy claim against both Ford and Rice. *Id.* at 7–8, 25–26. The district court also denied the motions to dismiss the pendent state claims for lack of jurisdiction against Ford. *Id.* at 10.

In support of their motion for summary judgment on the basis of qualified immunity, Ford and Rice argued that Duckworth's activities were not protected by the first amendment because they did not touch upon matters of public concern and instead Duckworth was motivated by self-interest and that they did not circulate or otherwise participate in the circulation of rumors that Duckworth had illegally wiretapped Ford's telephone. The district court found that Duckworth's opposition to Ford and his support of Fisher was protected speech or activity relating to a matter of public concern, even if he had a personal interest in Fisher's success. *Id.* at 22, *citing Darnell v. Ford,* 903 F.2d

556, 563 (8th Cir.1990) (holding Missouri State Highway Patrol officer's support of a particular candidate for superintendent was protected speech or activity relating to a matter of public concern, even though officer had personal interest in the candidate's success).

The district court also concluded that Ford was not entitled to judgment as a matter of law on the issue of motive. *Id.* at 24–25. The district court acknowledged that the motive issue was very close, but that Ford was not entitled to summary judgment because there was evidence from which the jury could conclude that Ford intended to retaliate and did retaliate against Duckworth for supporting Fisher by circulating rumors that Duckworth and Fisher had illegally wiretapped Ford's telephone. *Id.* at 25. The district court cited evidence that Ford knew Duckworth supported Fisher, Ford suspected Duckworth was "politicking" on Fisher's behalf, Ford told his friends in the patrol about the discovery of the device on his telephone, and Ford suggested to the superintendent that the device could have come from DDCC. *Id.* at 23.

Ford finally argued he was entitled to qualified immunity because it was not clearly established in 1988 that spreading rumors could give rise to a violation of first amendment rights. Duckworth argued it was clearly established in 1988 that a public employer could not retaliate against a public employee for that employee's exercise of first amendment rights. The district court again relied on *Darnell v. Ford* to conclude that the law regarding first amendment retaliation claims was clearly established in 1988. *Id.* at 29–30, *citing Darnell v. Ford,* 903 F.2d at 562. This appeal followed.

The denial of a claim of qualified immunity is immediately appealable. *Mitchell v. Forsyth,* 472 U.S. 511, 530, 105 S.Ct. 2806, 2817, 86 L.Ed.2d 411 (1985); *Johnson v. Hay,* 931 F.2d 456, 459–60 (8th Cir.1991). We review the claim of qualified immunity *de novo. Ford v. Dowd,* 931 F.2d 1286, 1289 (8th Cir.1990). We have carefully reviewed the record and find no error of fact or law. We adopt the district court's well-reasoned analysis. First, we agree with the district

court that Ford was not entitled to qualified immunity because the law was clearly established in 1988 that public employers could not retaliate against public employee for engaging in protected speech or activity and that Duckworth's opposition to Ford's candidacy (and his support of Fisher's) was protected by the first amendment. Second, we agree with the district court that Ford was not entitled to judgment as a matter of law on the issue of motive. In other words, we believe the material facts in dispute are sufficient to permit a reasonable jury to conclude that Ford intended to and did retaliate against Duckworth for supporting Fisher.

Accordingly, we affirm the order of the district court. *See* 8th Cir.R. 47B. We express no opinion on the merit of Duckworth's claims.