**Billy Darlene JACKSON, also known as Billy Darlene Kimbrough, Appellee,**

v.

**A. L. LOCKHART, Director, Arkansas Department of Correction, Appellant.**

No. 92–3682.

United States Court of Appeals, Eighth Circuit.

Submitted May 12, 1993.

Decided Nov. 2, 1993.

David Eberhard, Asst. Atty. Gen., Little Rock, AR, argued, for appellant.

Herbert C. Rule, Little Rock, AR, argued, for appellee.

Before BOWMAN, Circuit Judge, HENLEY, Senior Circuit Judge, and MAGILL, Circuit Judge.

BOWMAN, Circuit Judge.

A.L. Lockhart, former director of the Arkansas Department of Correction,[1] appeals the denial of his motion for summary judgment[2] in the 42 U.S.C. § 1983 suit for damages filed against him by Billy Darlene Jackson.[3] We reverse.

In 1986, Jackson began serving a five-year prison sentence within the Arkansas Department of Correction (ADC). By the end of that year she had attained Class I status within the ADC and was chosen to participate in a work release program authorized by the state law known as Act 814. Ark. Code Ann. §§ 12–30–401 to –408 (Michie 1987 & Supp.1993).[4] Jackson quit her job on July 8, 1988, and her parole officer was unable to locate her at her residence of record. She was arrested August 26, 1988, for public drunkenness. She was returned to confine-

---

1. In his brief Lockhart states that he has not been director of the Arkansas Department of Correction since May 1992.

2. This interlocutory appeal is properly before the Court because Lockhart is appealing the denial of a summary judgment motion in which he asserted a qualified immunity defense. *Mitchell v. Forsyth*, 472 U.S. 511, 530, 105 S.Ct. 2806, 2817, 86 L.Ed.2d 411 (1985); *Duckworth v. Ford*, 995 F.2d 858, 861 (8th Cir.1993).

3. Jackson's surname is now Kimbrough. Because of the caption of this case, and for the sake of clarity, we will refer to her as Jackson.

4. See *Edwards v. Lockhart*, 908 F.2d 299, 299–300 (8th Cir.1990), for a brief statutory history of the program.

ment at the prison and received an institutional disciplinary hearing on August 31, 1988. She claimed that she quit her job because she was sexually harassed, that she never moved her residence, and that she had drunk some beer but was not drunk when arrested. Nevertheless, she was found in violation of her Act 814 status and, subsequent to the perfunctory disciplinary hearing, her Act 814 status was revoked, she was demoted from a Class I minimum security inmate to a Class IV inmate, and she was divested of her good time credits previously earned.

Jackson was released on parole on November 1, 1989. She filed this suit in October 1990 seeking damages under 42 U.S.C. § 1983, claiming that her status as a work-release prisoner entitled her to more due process, that is, a more thorough hearing, than she received before that status could be constitutionally revoked.

■ Jackson contends that she was entitled to the process due a parolee at a parole revocation hearing: written notice of alleged violations; disclosure of evidence against her; opportunity to be heard, to present witnesses and documentary evidence; the right to confront witnesses; a neutral and detached hearing panel; and a written statement of findings of fact. *See Morrissey v. Brewer,* 408 U.S. 471, 489, 92 S.Ct. 2593, 2604, 33 L.Ed.2d 484 (1972). Lockhart claims that at the time Jackson's 814 status was revoked she was entitled only to the due process required for a prison disciplinary hearing where good time credits may be lost, as set forth in *Wolff v. McDonnell,* 418 U.S. 539, 564–71, 94 S.Ct. 2963, 2979–82, 41 L.Ed.2d 935 (1974). According to Lockhart, Jackson received the constitutional protections required by the clearly established law at the time, so he is entitled to qualified immunity for his actions. We review his claim *de novo. Duckworth v. Ford,* 995 F.2d 858, 861 (8th Cir.1993).

■ "[G]overnment officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have

known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Since 1990, it has been clearly established in Eighth Circuit jurisprudence that an Act 814 participant has a vested interest in remaining in the work release program, and thus is entitled to a *Morrissey* -type hearing before 814 status may be constitutionally revoked. *Edwards v. Lockhart,* 908 F.2d 299, 303 (8th Cir.1990). But "[i]f the law at [the time of the challenged action] was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to 'know' that the law forbade conduct not previously identified as unlawful." *Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738. Because the opinion in *Edwards* was issued after Jackson's revocation hearing, it remains for us to decide whether it was clearly established before *Edwards* that Jackson was entitled to a *Morrissey*-type hearing. *See Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738 ("On summary judgment, the judge appropriately may determine, not only the currently applicable law, but whether that law was clearly established at the time an action occurred.").

We agree with Jackson that there are similarities between parolees and 814 work release participants that should have been obvious to Lockhart. There are also, however, some significant differences. Under the Act 814 program, the ADC still has a significant amount of control over the inmate, including where she may live, the disbursement of her earnings, and the frequency of contact with the ADC that is required. There is enough of a difference between the two forms of release that this Court went on at some length to explain why *Morrissey* protections applied to 814 participants. *Edwards,* 908 F.2d at 301–03. Moreover, the relevant statutes in effect at the time refer to Act 814 participants as "inmates." *See, e.g.,* Ark. Code Ann. § 12–30–401(b) (Michie 1987) ("department may institute 'work-release' programs under which the *inmates* selected to participate") (emphasis added); *id.* § 12–30–406(a) (Michie 1987) ("earnings by the *inmate* shall be paid directly to the department") (emphasis added); *id.* § 12–30–407(b)(1) (Michie 1987) ("board may promul-

gate rules and regulations to allow work-study release *inmates* to reside at approved locations") (emphasis added). Although the Arkansas legislature's labeling an 814 participant an "inmate" is not determinative, it does make it reasonable for the ADC director, absent authoritative direction to the contrary, to believe that Act 814 status may be more akin to inmate status (deserving of a prison disciplinary hearing before revocation) than to parolee status (deserving of *Morrissey* protections before revocation).

We conclude that it was objectively reasonable for Lockhart, as late as 1988 when Jackson's 814 status was revoked, to believe that the due process protections set forth in *Wolff,* rather than those in *Morrissey,* were applicable to a hearing on revocation of 814 status, especially given that the contours of Act 814 participation still were being explored at that time. *See, e.g., Mahfouz v. Lockhart,* 826 F.2d 791, 793 (8th Cir.1987) ("[W]e hold that the Arkansas statutes do not create a protected liberty interest in participation in the work/study release program."). Jackson makes much of the affidavit of Jackson Jones, parole hearing examiner for the State Parole Board and the ADC, and an attorney. Jones says that in 1984 he told David Guntharp, assistant director of field services of the ADC, in response to Guntharp's question, that he, Jones, believed an Act 814 participant was entitled to a *Morrissey*-type hearing before that status could be constitutionally revoked. What Jones may have thought or may have told Guntharp, however, is irrelevant. It is Lockhart who is the defendant here, and we are inquiring into his objective reasonableness, not Jones's or Guntharp's.

We are satisfied that *Morrissey* and Act 814 did not make the result in *Edwards* inevitable and therefore obvious to the reasonable ADC director. "A government official is not required to guess, at his peril, the future development of constitutional doctrine...." *Hall v. Lombardi,* 996 F.2d 954, 958 (8th Cir.1993).

Because the Act 814 participant's constitutional right to the due process protections of a *Morrissey*-type hearing was not clearly established at the time Jackson's 814 status

was revoked, Lockhart is entitled to qualified immunity. The judgment of the District Court is reversed and the case is remanded with directions to the court to enter summary judgment in favor of Lockhart and dismiss the case.

HENLEY, Senior Circuit Judge, concurring.

I concur in the result.