**Harvey Lucious HALL,
Plaintiff–Appellee,**

v.

**George LOMBARDI; William Armontrout, Warden; Donald Cline, Defendants–Appellants.**

No. 92–2543.

United States Court of Appeals, Eighth Circuit.

Submitted March 18, 1993.

Decided June 29, 1993.

Rehearing and Suggestion for Rehearing En Banc Denied Aug. 11, 1993.

Bruce Farmer, Jefferson City, MO, argued (William L. Webster and Christine A. Alsop, on the brief), for appellants.

David H. Bailey, St. Peters, MO, argued, for appellee.

Before McMILLIAN, JOHN R. GIBSON, and WOLLMAN, Circuit Judges.

JOHN R. GIBSON, Circuit Judge.

George Lombardi, William Armontrout, and Donald Cline appeal from the district court's[1] denial of their request for summary judgment on Missouri inmate Harvey Lucious Hall's 42 U.S.C. § 1983 (1988) suit. Hall claims that the appellants violated his Fourteenth and Eighth Amendment rights by failing to release him from the Missouri State Penitentiary's Special Management Facility after he had been approved for reassignment to the general population's Protective Custody Unit. The appellants argue that they are entitled to summary judgment based on qualified immunity. Armontrout and Lombardi also contend that they are entitled to summary judgment because they did not have personal knowledge of and were not involved in Hall's continued confinement. We affirm the judgment of the district court.

In June 1987, Hall was transferred to Level I of the Special Management Facility[2] for possessing dangerous contraband. The Classification Committee reviewed Hall's placement later that same month and moved him to Level II. In September 1987, the Committee transferred Hall to Level III, and in December 1987, the Committee recommended that Hall be released to the general population's Protective Custody Unit. Although the Warden's designee approved the Committee's recommendation, Hall was not reassigned. The Committee reviewed Hall's status again on four different occasions during 1988 and each time recommended that he be released from the Special Management Facility. The recommendations were always approved, but Hall was not released. In February 1989, Hall committed another conduct violation, the Classification Committee recommended that Hall be reclassified for Level I housing in the Special Management Facility, and the recommendation was approved. Hall worked his way through the Special Management Facility levels again, and in June 1989, the Committee's recommendation that Hall be assigned to an "acceptable level" was approved. In August 1989, the Committee again recommended that Hall be released, the recommendation was approved, and Hall was finally reassigned to the Protective Custody Unit.

Hall filed suit, claiming that the appellants violated his Fourteenth and Eighth Amendment rights by failing to release him after the recommendations for release had been approved. The appellants requested summary judgment, arguing that Hall did not have a constitutional right to be transferred, that Hall received procedural due process, that other inmates who were moved before Hall were different, that the Special Management Facility conditions were not cruel and unusual, and that qualified immunity applied.

The district court referred the case to a magistrate judge,[3] who recommended that the appellants' request for summary judgment be denied. *Hall v. Lombardi*, No. 89–4221–CV–C–5, Slip op. at 8 (W.D. Mo. Feb. 13, 1992) (Magistrate's Report and Recommendations). The magistrate judge found that Hall "spent approximately fourteen months in the Special Management Facility after he was approved for release in December, 1987, and approximately two months in the Special Management Facility after he was approved for release in June, 1989." *Id.* at 4. The magistrate judge rejected the appellants' arguments regarding qualified immunity because, although Hall had received procedural protection regarding his housing assignment, "the failure to release [Hall] from administrative segregation and retransfer him to protective custody was an arbitrary failure to restore the measure of liberty to which [Hall] was entitled—a substantive right." *Id.* at 6–7. The magistrate judge determined that Hall had a liberty interest in being released from the Special Management Facility, and stated that "any reasonable person should know that neglect-

---

1. The Honorable Scott O. Wright, Senior United States District Judge for the Western District of Missouri.

2. The Special Management Facility serves as the behavior modification and administrative segregation unit of the Missouri State Penitentiary. The Special Management Facility consists of three housing units—Levels I through III—which are progressively less restrictive.

3. The Honorable William Knox, United States Magistrate Judge for the Western District of Missouri. *See* 28 U.S.C. § 636 (1988).

ing [Hall] for seventeen months may well be in violation of his rights." *Id.* at 7. The magistrate judge examined the appellants' reasons for keeping Hall in the Special Management Facility and concluded that a material issue of fact existed, namely, whether the appellants arbitrarily had deprived Hall of his liberty interest keeping him in the Special Management Facility for such a long period of time after he was approved for release. *Id.* at 7–8. The district court adopted the magistrate judge's recommendations and denied the motion for summary judgment. *Hall v. Lombardi,* No. 89–4221–CV–C–5 (W.D. Mo. June 11, 1992). Lombardi, Armontrout, and Cline appealed.

## I.

The appellants argue that the district court erred in denying their motion for summary judgment based on qualified immunity.

A denial of a motion for summary judgment is not a final judgment, and therefore, is not usually appealable. *See Wright v. South Ark. Regional Health Ctr.,* 800 F.2d 199, 202 (8th Cir.1986). A denial of summary judgment on the basis of qualified immunity, however, is an exception to the general rule, and we have held that when there is a closely related question of law, we will consider the merits of the appeal. *Drake v. Scott,* 812 F.2d 395, 398–99 (8th Cir.), *cert. denied,* 484 U.S. 965, 108 S.Ct. 455, 98 L.Ed.2d 395 (1987); *see also Mitchell v. Forsyth,* 472 U.S. 511, 530, 105 S.Ct. 2806, 2817–18, 86 L.Ed.2d 411 (1985); *Johnson v. Hay,* 931 F.2d 456, 459–60 (8th Cir.1991); *Wright,* 800 F.2d at 202.

We review the district court's denial of summary judgment under the same standard as the district court applied to the motion. A party is entitled to summary judgment only when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). We view the evidence in the light most favorable to Hall, the nonmovant, and give him the benefit of all reasonable inferences. *Johnson,* 931 F.2d at 460. In addition, qualified immunity is an affirmative defense which the

appellants have the burden of proving. *Slone v. Herman,* 983 F.2d 107, 109 (8th Cir.1993).

Prison officials may generally rely on the defense of qualified immunity to protect them from liability for civil damages. *Brown v. Frey,* 889 F.2d 159, 165 (8th Cir. 1989), *cert. denied,* 493 U.S. 1088, 110 S.Ct. 1156, 107 L.Ed.2d 1059 (1990). In determining whether the appellants are protected by qualified immunity, we must first decide "the essentially legal question whether the conduct of which [Hall] complains violated clearly established law," and then we must decide whether Hall adequately alleged the commission of such acts. *Mitchell,* 472 U.S. at 526, 105 S.Ct. at 2815; *Johnson,* 931 F.2d at 460. The test "focuses on the objective legal reasonableness of an official's acts," and the qualified immunity defense fails if the official violates a clearly established right because "a reasonably competent public official should know the law governing his conduct." *Harlow v. Fitzgerald,* 457 U.S. 800, 818–19, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982).

### A.

In *Knight v. Armontrout,* 878 F.2d 1093, 1095 (8th Cir.1989), we held that Missouri State Penitentiary Regulation 20–212.–040 creates "a protectible liberty interest." We did not decide *Knight,* however, until about the time Hall was released from the Special Management Facility. The appellants therefore contend that even if Hall had a substantive due process right to be removed from the Special Management Facility, it was not "clearly established." The appellants argue that if neither the Supreme Court nor this Court has decided a factually and legally similar case, the right is rarely considered "clearly established." The appellants then point out that the district court did not cite any Supreme Court or Eighth Circuit authority in support of its conclusions.

Apparently believing that the law regarding Hall's liberty interest was not clearly established, the magistrate judge determined that "[d]efendants are not entitled to qualified immunity for actions which are arbitrary and capricious." Slip op. at 6. Relying on

*Childs v. Pellegrin,* 822 F.2d 1382 (6th Cir. 1987), the magistrate judge determined that the facts in this case suggested that the appellants' failure to release Hall was "an *arbitrary* failure to restore the measure of liberty to which plaintiff was entitled—a substantive right." Slip op. at 6–7 (emphasis added). The magistrate judge examined the appellants' reasons for Hall's prolonged confinement, and concluded that a material issue of fact existed as to whether the appellants had "arbitrarily" deprived Hall of a constitutionally protected liberty interest. *Id.* at 8.

As the appellants point out, "[w]e have yet to decide whether substantive due process provides a right to be free from arbitrary and capricious state action." *See Weimer v. Amen,* 870 F.2d 1400, 1405 (8th Cir.1989). We, however, need not decide this question here because we conclude that the law was clearly established at the time of Hall's prolonged detention.[4]

■ To demonstrate that the law is "clearly established," there must be a showing that a "reasonable official would understand that what he is doing violate[s]" plaintiff's rights. *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). A government official is not required to guess, at his peril, the future development of constitutional doctrine, *see Mitchell,* 472 U.S. at 535 n. 12, 105 S.Ct. at 2820 n. 12, nor is a government official liable for a "violation of extremely abstract rights." *Anderson,* 483 U.S. at 639, 107 S.Ct. at 3039. This is not to say, however, that an official is protected by qualified immunity unless the very action in question has been held unlawful. *Id.* at 640, 107 S.Ct. at 3039. We have taken a broad view of what constitutes "clearly established law" for the purpose of qualified immunity, requiring some but not precise factual correspondence with precedents and demanding that officials apply "general, well-developed legal principles." *Boswell v. Sherburne County,* 849 F.2d 1117, 1121 (8th Cir.1988),

*cert. denied,* 488 U.S. 1010, 109 S.Ct. 796, 102 L.Ed.2d 787 (1989); *Lappe v. Loeffelholz,* 815 F.2d 1173, 1177 (8th Cir.1987). It is only necessary that the unlawfulness of the official's act is apparent in view of pre-existing law. *Coffman v. Trickey,* 884 F.2d 1057, 1063 (8th Cir.1989), *cert. denied,* 494 U.S. 1056, 110 S.Ct. 1523, 108 L.Ed.2d 763 (1990); *see also Johnson,* 931 F.2d at 460–61.

■ We believe that in this case a reasonable official would have understood that he was violating Hall's rights. *See Anderson,* 483 U.S. at 640, 107 S.Ct. at 3039. Although we did not specifically hold that the prison regulations created a liberty interest until 1989, our decision in *Knight* was predictable. There are many Supreme Court and Eighth Circuit cases that support the "general, well-developed legal principle" that regulations which contain "particularized substantive standards or criteria that guide the exercise of discretion by penitentiary officials" create a protectible liberty interest. *Clark v. Brewer,* 776 F.2d 226, 230 (8th Cir.1985); *see also, e.g., Greenholtz v. Inmates of Neb. Penal and Correctional Complex,* 442 U.S. 1, 11–12, 99 S.Ct. 2100, 2105–06, 60 L.Ed.2d 668 (1979); *Vitek v. Jones,* 445 U.S. 480, 488–90, 100 S.Ct. 1254, 1261–62, 63 L.Ed.2d 552 (1980); *Green v. Black,* 755 F.2d 687, 688 (8th Cir. 1985); *Parker v. Corrothers,* 750 F.2d 653, 660–61 (8th Cir.1984); *Williams v. Missouri Bd. of Probation and Parole,* 661 F.2d 697, 698 (8th Cir.1981), *cert. denied,* 455 U.S. 993, 102 S.Ct. 1621, 71 L.Ed.2d 855 (1982); *Evans v. Dillahunty,* 662 F.2d 522, 525 (8th Cir. 1981); *Wright v. Enomoto,* 462 F.Supp. 397, 402–03 (N.D.Cal.1976), *summarily aff'd,* 434 U.S. 1052, 98 S.Ct. 1223, 55 L.Ed.2d 756 (1978). Moreover, when these regulations contain language of a mandatory nature (shall, will, must), they are interpreted as creating a protectible liberty interest. *Hewitt v. Helms,* 459 U.S. 460, 471–72, 103 S.Ct. 864, 871–72, 74 L.Ed.2d 675 (1983); *Greenholtz,* 442 U.S. at 11–12, 99 S.Ct. at 2105–06;

---

4. We note that keeping an inmate in the Special Management Facility for sixteen to seventeen months after that inmate has been repeatedly approved for release appears to be the type of arbitrary and capricious activity that might warrant such a holding—it seems abusive, shocks our conscience, and offends our judicial notions

of fairness. *See Weimer,* 870 F.2d at 1405 (stating that "the cornerstone of due process is the prevention of abusive governmental power," and to violate substantive due process, the conduct must "shock the conscience or otherwise offend our judicial notions of fairness").

*Clark,* 776 F.2d at 230; *Parker,* 750 F.2d at 660–61; *Williams,* 661 F.2d at 698; *Evans,* 662 F.2d at 525; *Wright,* 462 F.Supp. at 402–03.

The prison regulation at issue here provides:

(11) RELEASE FROM THE SPECIAL MANAGEMENT FACILITY: Most inmates assigned to the Special Management Facility will work toward release from the facility to the general population. This will be accomplished by demonstrating progressively more positive and responsible behavior, as he is promoted through the level system.

(A) Influencing Factors: The primary performance objectives will be satisfactory work and training evaluations, demonstrated positive attitude and conduct, and meaningful participation in available self-improvement activities.

(B) Actual Release: An inmate's release to the general population will be accomplished by being promoted from Level I through Level II to Level III as a result of positive reviews by the Special Management Facility Classification Committee and the inmate's Unit Classification Treatment Team. A significant period of continuing and progressively more responsible behavior in Level III will be required for the Special Management Facility Classification Committee to recommend and the Warden or designee to approve release to the general population.

Regulation 20–212.040(11)(A), (B). When determining whether an inmate has "accomplished" release from the Special Management Facility, the prison officials must review the influencing factors to see if "[a] significant period of continuing and progressively more responsible behavior in Level III" has been achieved. *Id.* This finding is "required" before a recommendation for release may be made or approved. *Id.* The language tells "most" inmates that release

"will be accomplished" once the criteria have been met. *Id.* (emphasis added). Hall met all of these criteria, the Classification Committee recommended his release many times, and the recommendations were approved each time. Nevertheless, Hall spent an additional sixteen to seventeen months in the Special Management Facility.

Any reasonable official would understand that once Hall obtained final approval for release, he had a legitimate expectation of being released in a reasonable amount of time, and that failing to meet that expectation for such a long time violated Hall's rights. The unlawfulness of the prison officials' actions is apparent in view of pre-existing law. The right is not abstract, and the situation did not require the officials to guess about the future development of constitutional doctrine. Although the prison officials followed the general procedure in recommending and approving release many times, they withheld the end result of that procedure—release.

We recognize that the regulations say "most," not all, inmates will work toward release from the Special Management Facility. Hall did not fall into the category of inmates who could not work toward release as he had already worked his way toward release, met all the requirements, and even obtained final approval. Similarly, we reject the appellants' argument that Hall fell within the listed exceptions to the general release rule. *See* Regulation 20–212.040(11)(C).[5] We agree with the magistrate judge's determination that the exceptions expressly apply to an inmate's eligibility for a recommendation of release or approval of that recommendation, not to inmates like Hall who have been through the entire process and received a recommendation which was approved. Moreover, each exception requires a specific directive from the Warden, and we find no

---

5. Regulation 20–212.040(11)(C) provides:
   ... Exceptions: There will be some inmates assigned to the Special Management Facility who will not become eligible for release to general population due to administrative reasons which may include security considerations, the inmate's personal safety, or other related correctional management concerns. Such inmates may progress as far in the Special Management Facility level system as their particular circumstances will permit. Decisions in these cases will consist of specific directives from the Warden.

evidence in the record before us of such a directive regarding Hall.[6]

The appellants also argue that in light of our decision in *Williams v. Armontrout*, 852 F.2d 377, 378–79 (8th Cir.), *cert. denied*, 488 U.S. 996, 109 S.Ct. 564, 102 L.Ed.2d 589 (1988), the law in this area was not clearly established. In *Williams*, an inmate alleged that prison officials had violated his constitutional rights by consistently recommending that he remain at Level I—the most restrictive level in the Special Management Facility. *Id.* We held that the Missouri prison regulations at issue did not create a liberty interest because they did not contain substantive criteria for the committee to use when deciding whether a prisoner should be reclassified within the Special Management Facility. *Id.* There is a significant difference, however, in the language of the regulations in *Williams* and the language here. The regulations in *Williams* merely defined "the role of the Division to follow procedures which will result in the prompt return of the inmate to the general population when the security of the institution and inmate permits," set forth the Classification Committee's duties, and provided for periodic inmate reviews. *Id.* Nothing limited the officials' discretion in determining when an inmate should be moved within the Special Management Facility. To the contrary, the regulations before us specifically mandate that certain factors be considered and that specific requirements be met before an inmate can "accomplish" release. Once these have been met, including receipt of a recommendation and final approval, the inmate has a legitimate expectation that he will be released in a reasonable amount of time.[7] In addition, the prison officials must have been aware of the general, well-developed test for deciding when a regulation creates a liberty interest

because we set out those requirements in *Williams*, 852 F.2d at 379.

The appellants also argue that this case is substantially similar to *Sanders v. Woodruff*, 908 F.2d 310 (8th Cir.), *cert. denied*, 498 U.S. 987, 111 S.Ct. 525, 112 L.Ed.2d 536 (1990). In *Sanders*, an inmate claimed that the prison officials violated his due process rights when they moved him within the Special Management Facility from a less restrictive Level II assignment to Level I. *Id.* at 313. We held that the liberty interest identified in *Knight*, in which the inmates complained of being moved into punitive detention and being detained after they were approved for release, was not applicable because the inmate in *Sanders* was already in administrative segregation and was complaining only about movement within the Facility. *Id.* We also held that the inmate in *Sanders* had received all the process that was due under the regulations. *Id.* Here, Hall is not complaining about being moved from one Level to another within the Special Management Facility. Instead, Hall objects to his continued confinement after he obtained final approval for a complete release. In addition, the Warden in *Sanders* specifically directed the inmate's reassignment and the Classification Committee agreed. *Id.* at 312. Here, the Classification Committee repeatedly recommended Hall's release and the Warden's designee gave final approval each time.

Finally, relying on *Weimer*, 870 F.2d at 1405–06, the appellants contend that Hall's substantive due process rights are no greater than his procedural rights, and therefore, because the magistrate judge found that Hall's procedural rights were not violated, Hall's substantive rights were not violated. This argument misses the point. Although substantive rights may not be greater than procedural rights, they are not identical.

**6.** In fact, on appeal, Warden Armontrout argues that he did not have personal knowledge of or involvement in Hall's situation.

**7.** At oral argument, the appellants asked us to specify exactly what amount of time is reasonable. We will not give an advisory opinion. Although there is no static test for determining how long a prisoner's confinement may continue before his rights are implicated, common sense is helpful. *See Howard v. Adkinson*, 887 F.2d 134,

140 (8th Cir.1989). Certainly, as we held in *Knight*, when the inmates received substantially the same privileges they would have received if they had been transferred, a thirteen-day delay due to a shortage of beds was not unreasonable. 878 F.2d at 1095. A transfer out of the Special Management Facility and a sixteen to seventeen month delay, on the other hand, stands in stark contrast.

Hall had the right to have the procedures followed and had a legitimate expectation that once the specified requirements were met, the promised result would occur. Hall may not have the right to receive a recommendation of release or to have a recommendation approved, but once the recommendation and final approval were both given, he had an interest in being released within a reasonable time period.

We conclude that "general, well-established legal principles," so evident that they would be confirmed by general common sense, would have alerted a reasonable prison official to the fact that Hall's rights were being violated by the extended delay.

**B.**

█ The appellants also argue that Hall has not alleged sufficient facts to demonstrate that the appellants violated his rights. For many of the same reasons discussed in Part A, we reject this argument.

More specifically, the appellants contend that there were legitimate reasons for keeping Hall in the Special Management Facility, and that they did not act intentionally. Hall, however, disputes the appellants' claimed reasons and points to other inmates who were approved for release after he was, but released before him. Moreover, as the appellants conceded at oral argument, a dispute exists with regard to the differences between the privileges and conditions of the Special Management Facility and the Protective Custody Unit.

Given the extended delay and the factual disputes, we conclude that a material issue of fact exists as to whether Hall was deprived of a constitutionally protected liberty interest by the prison officials failure to release him from the Special Management Facility once he had been approved for release. The district court did not err in refusing to grant the appellants' motion for summary judgment.

**II.**

█ Appellants Armontrout and Lombardi argue that the district court should have granted their request for summary judgment because they had no personal knowledge of or involvement in the failure to release Hall. Armontrout and Lombardi contend that they were only sued because they were within the "chain of command;" therefore, as no respondeat superior liability exists under section 1983, they cannot be held liable.

█ Although Armontrout and Lombardi may not be liable under a respondeat superior theory, proof of actual knowledge is not an absolute prerequisite for imposing supervisory liability. *See Howard,* 887 F.2d at 138. We have "consistently held that reckless disregard on the part of a supervisor will suffice to impose liability." *Id.; see also Martin v. White,* 742 F.2d 469, 474 (8th Cir.1984); *Miller v. Solem,* 728 F.2d 1020, 1024–25 (8th Cir.), *cert. denied,* 469 U.S. 841, 105 S.Ct. 145, 83 L.Ed.2d 84 (1984).

Viewing the evidence in the light most favorable to Hall, we cannot say that a factual dispute does not exist. Prison regulation 212.040(9)(A) requires Cline to report to Armontrout the names of all inmates assigned to the Special Management Facility, the reason for assignment, and the length of time assigned. If an inmate has been assigned to the Special Management Facility for more than one year, Armontrout or his representative must personally review the inmate's file and determine, in writing, whether the prisoner will be retained in the Special Management Facility. Regulation 212.040(9)(C). If the inmate is retained "for an additional year or years," Armontrout must send a report to Lombardi for review and advice. *Id.* Thus, their compliance or noncompliance with these regulations may establish actual knowledge or reckless disregard.

Lombardi and Armontrout argue that because the magistrate judge found no procedural due process violation, the retention regulation is irrelevant to this situation. We, however, are not looking to these regulations to establish a possible procedural violation. Instead, these regulations are relevant in the context of linking Lombardi and Armontrout to Hall's situation. Whether they actually knew or should have known of Hall's status and acted or failed to act in such a way that

would cause them to be liable is for the jury to decide.

We affirm the district court's decision to deny the appellants' motion for summary judgment.