25 F.3d 1406
 Kevin L. RICKER, Plaintiff-Appellee,
v.
Walter LEAPLEY and Doug Weber, Defendants-Appellants,
Lynn Delano; Richard Rist; Ed Lightenberg; Dean Hinders;
Robert Kuemper; Randy Veldboom; Elmer Miller; Barry
Mennenga; James Severson; Robert Hanson; Paul Schloe;
Kenneth Hemenway; Dennis Block, Defendants.
 No. 93-1920.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Dec. 14, 1993.
Decided June 7, 1994.
 
 Eric Rasmussen, Brookings, SD, argued (Richard J. Helsper and Eric N. Rasmussen, on the brief), for appellants.
 Kent Roland Cutler, Sioux Falls, SD, argued, for appellee.
 Before WOLLMAN, Circuit Judge, HEANEY, Senior Circuit Judge, and LOKEN, Circuit Judge.
 LOKEN, Circuit Judge.
 
 
 1
 Warden Walter Leapley and Associate Warden Douglas Weber of the South Dakota State Penitentiary appeal the district court's denial of qualified immunity in this Sec. 1983 suit by inmate Kevin L. Ricker. We conclude that Ricker had no clear constitutional right to the disclosure of favorable evidence first discovered after he was found guilty of prison misconduct and assigned to punitive segregation. Accordingly, defendants are entitled to qualified immunity, and we reverse.
 
 I.
 
 2
 On August 30, 1990, suspecting that inmate Ricker was dealing cocaine in the prison, security officers searched his cell and found fourteen packets of white powder wrapped in a makeshift sack. Weber called an officer of the state Division of Criminal Investigation, who field-tested the substance, opined that it was cocaine, and took the remaining packets for further testing in anticipation of a criminal prosecution.
 
 
 3
 Ricker was charged with violating two prison rules, possession of contraband, and possession of narcotics not prescribed by a prison doctor. At a September 11 disciplinary hearing, Ricker testified that someone planted the contraband in his cell. The Disciplinary Board nonetheless found him guilty of both charges and sentenced him to ninety days in punitive segregation. Warden Leapley denied Ricker's appeal, concluding "that you were not set-up and that evidence supports that the cocaine belonged to you."
 
 
 4
 Ricker was confined in punitive segregation until November 28, 1990. On October 2, 1990, a chemist at the South Dakota State Crime Laboratory determined that the substance seized from Ricker's cell was not cocaine, but an anti-depressant prescription drug, Amitriptyline. Nevertheless, on December 6, a classification board conducting a periodic review of Ricker's classification took this cocaine misconduct conviction into account in denying him trustee status. Weber was a member of that classification board.
 
 
 5
 Ricker learned of the lab test results in March 1991 and filed a grievance with Warden Leapley. Leapley promptly overturned the conviction and removed it from Ricker's record. Ricker then commenced this suit, alleging that Leapley, Weber, and the other defendants violated his due process and Eighth Amendment rights by failing to promptly disclose the lab test results, failing to release him from the balance of his disciplinary sentence, and using the erroneous conviction to adversely affect his December 6, 1990, classification review.
 
 
 6
 Defendants moved for summary judgment on qualified immunity grounds, and both sides conducted discovery before submitting that issue to the court. At his deposition, Weber was asked when he first learned that the substance was not cocaine:
 
 
 7
 Q. Do you remember when you discovered that the substance was not cocaine; shortly after it was confiscated, long after it was confiscated?
 
 
 8
 A. I believe at least a couple of months had passed.... I think at least a couple of months, and that is a guess. But I think it is pretty close.
 
 
 9
 Q. In relation to Ricker being in the adjustment center [punitive segregation], was he still in the adjustment center when you were notified?
 
 
 10
 A. I think so. If two months is accurate, yeah, that would still place him down there, because I believe he received ninety days AC as a disciplinary action, punitive sanction for that possession.
 
 
 11
 Q. ... [W]ere you responsible for informing Warden Leapley or anybody else that this substance had been determined not to be cocaine?
 
 
 12
 A. That would have been my responsibility, right, to notify the Warden.
 
 
 13
 Q. And did you do that?
 
 
 14
 A. I don't believe so.
 
 
 15
 Q. Why didn't you do that?
 
 
 16
 A. I am not sure actually, but I guess maybe in the natural course of events during the investigation when anything--again DCI's investigation at this point it was and it would have been, and evidently I didn't feel it necessary.
 
 
 17
 Warden Leapley testified that he reversed Ricker's conviction as soon as he learned that the substance was not cocaine. Leapley expressed concern Ricker was not informed of the lab test results for five months.
 
 
 18
 In ruling on the qualified immunity issue, the district court concluded that
 
 
 19
 [a] reasonable official having knowledge of the results of the [lab] test prior to the December 6th [classification] hearing would understand that to do nothing to correct the situation would result in a violation of [Ricker's] constitutional rights.
 
 
 20
 Applying this standard, the court dismissed Ricker's claims against most of the defendants because they had no personal knowledge of the lab test results. However, the court denied qualified immunity to Weber, because he knew of the test results before December 6, and to Leapley, because when he first learned of the test results "is a disputed question of fact." Leapley and Weber appeal these qualified immunity rulings, which we review de novo. Jackson v. Lockhart, 7 F.3d 1391, 1393 (8th Cir.1993).
 
 II.
 
 21
 Qualified immunity shields government officials performing discretionary functions if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). To determine whether Leapley and Weber violated a clearly established right, we must first determine "whether [Ricker] has asserted a violation of a constitutional right at all." Siegert v. Gilley, 500 U.S. 226, 232, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991). The district court did not address this question, concluding simply that Ricker's "constitutional rights" were violated if prison officials knowingly allowed his disciplinary conviction to be counted against him at the December 6 classification hearing. On appeal, Ricker asserts a deprivation of his rights under two provisions, the Due Process Clause and the Eighth Amendment.
 
 
 22
 A. Due Process.
 
 
 23
 The Due Process Clause of the Fourteenth Amendment protects against state deprivations of protected liberty interests. For prison inmates, this is a limited right:
 
 
 24
 We have repeatedly said both that prison officials have broad administrative and discretionary authority over the institutions they manage and that lawfully incarcerated persons retain only a narrow range of protected liberty interests.
 
 
 25
 Hewitt v. Helms, 459 U.S. 460, 467, 103 S.Ct. 864, 869, 74 L.Ed.2d 675 (1983). Inmates have a federal right to due process at prison classification and disciplinary proceedings only if state law contains "substantive predicates" limiting the prison administrators' discretion to classify, assign, and punish inmates. Swenson v. Trickey, 995 F.2d 132, 134 (8th Cir.), cert. denied, --- U.S. ----, 114 S.Ct. 568, 126 L.Ed.2d 468 (1993).
 
 
 26
 At oral argument, Ricker conceded that South Dakota law did not impose "substantive predicates" on the discretionary December 6, 1990, classification decision, and therefore he had no protected liberty interest in that classification proceeding. Though Ricker's chance of achieving trustee status would no doubt have improved if this disciplinary conviction had been removed from his record prior to that hearing, defendants' failure to do so did not violate his due process rights. See Kentucky Dept. of Corrections v. Thompson, 490 U.S. 454, 462-65, 109 S.Ct. 1904, 1909-11, 104 L.Ed.2d 506 (1989).
 
 
 27
 Abandoning the district court's focus, Ricker now argues that his continued confinement in punitive segregation after the substance was determined not to be cocaine violated his due process liberty interests. This argument at least has legitimate due process roots, for Leapley and Weber concede, as they must, that South Dakota law grants Ricker a protected liberty interest in avoiding punitive segregation.
 
 
 28
 In assessing this contention, we note first that Ricker does not challenge the initial September 1990 disciplinary proceeding on due process grounds. In that proceeding, Ricker was given advance notice of the misconduct charged; a hearing was held at which he confronted his accusers, testified in his own defense, and called witnesses in his behalf; and he received a written statement summarizing the reasons for the Disciplinary Board's decision. See Wolff v. McDonnell, 418 U.S. 539, 563-72 & n. 19, 94 S.Ct. 2963, 2978-82 & n. 19, 41 L.Ed.2d 935 (1974). There was "some evidence" to support the Disciplinary Board's decision that Ricker violated prison rules by keeping cocaine in his cell. See Superintendent v. Hill, 472 U.S. 445, 455, 105 S.Ct. 2768, 2773, 86 L.Ed.2d 356 (1985). The fact that Ricker may have been innocent of the charges does not raise a due process issue. "The [C]onstitution demands due process, not error-free decision-making." McCrae v. Hankins, 720 F.2d 863, 868 (5th Cir.1983).
 
 
 29
 Ricker's due process claim is based upon state lab tests conducted after he was found guilty of violating prison rules. In other words, he contends at bottom that he had a due process right to have his disciplinary proceeding reopened on the ground of newly discovered evidence. In the criminal law context, "[c]laims of actual innocence based on newly discovered evidence" do not state a ground for federal habeas relief. Herrera v. Collins, --- U.S. ----, ----, 113 S.Ct. 853, 860, 122 L.Ed.2d 203 (1993).[1] "[T]he discovery of [new] evidence does not impugn the constitutionality" of the initial conviction. Byrd v. Armontrout, 880 F.2d 1, 8 (8th Cir.1989), cert. denied, 494 U.S. 1019, 110 S.Ct. 1326, 108 L.Ed.2d 501 (1990). Because due process rights are far more limited in the prison disciplinary setting, we think it apparent that Ricker had no independent due process right to have his disciplinary conviction reopened on grounds of newly discovered evidence. He offers no evidence that South Dakota law imposed a "substantive predicate" requiring Weber and Leapley to reconsider his discipline when this material new evidence was discovered. Therefore, we conclude that Ricker had no due process right to such a procedure.
 
 
 30
 We have held that the refusal to release an inmate to the general prison population after he obtained final approval for release violated clearly established due process rights. See Hall v. Lombardi, 996 F.2d 954, 959 (8th Cir.1993), cert. denied, --- U.S. ----, 114 S.Ct. 698, 126 L.Ed.2d 665 (1994). Hall suggests that Ricker's due process rights were violated if he had a clear right to release from punitive segregation. See also Slone v. Herman, 983 F.2d 107, 110 (8th Cir.1993) (continued detention beyond inmate's release date is a deprivation of liberty protected by the Due Process Clause). But these refusal-to-release cases are distinguishable. Here, although the lab test established that the white powder was not cocaine, it was a prescription drug, possession of which violated the same prison rules Ricker was convicted of violating. Moreover, the quantity found in his cell and the way it was packaged might have suggested that Ricker intended to sell the drug as cocaine to other inmates. Thus, while the fact that the contraband was Amitriptyline lent credence to Ricker's set-up defense, and might have warranted a lesser penalty if he was convicted, it did not establish his clear right to release from punitive segregation.
 
 
 31
 There remains a question that Ricker has not addressed--whether Weber had a due process duty to disclose the favorable lab test results before Ricker completed his ninety-day sentence. We are not aware of any case imposing such a duty. Compare Houston v. Partee, 776 F.Supp. 1309, 1310 (N.D.Ill.1991) ("No authority ... imposes a duty on a police officer or someone in the equivalent position, who has learned of exculpatory evidence affecting an already-convicted individual, to search out that individual for disclosure purposes"). In these circumstances, Weber's failure to disclose did not violate a clearly established due process right of which a reasonable prison administrator would have known. It would have been better had Weber promptly disclosed the lab test results to Ricker and Leapley, because that might have resulted in the reopening of Ricker's disciplinary hearing. But Ricker had no due process right to have his discipline reconsidered on the ground of newly discovered evidence, and thus Weber's decision not to disclose is one of those "discretionary decisions that are not the business of federal judges" under Sec. 1983. Meachum v. Fano, 427 U.S. 215, 229, 96 S.Ct. 2532, 2540, 49 L.Ed.2d 451 (1976).
 
 
 32
 For these reasons, both Leapley and Weber are entitled to qualified immunity on Ricker's due process claims.
 
 
 33
 B. Cruel & Unusual Punishment.
 
 
 34
 Ricker also claims an Eighth Amendment violation. "After incarceration, only the unnecessary and wanton infliction of pain ... constitutes cruel and unusual punishment forbidden by the Eighth Amendment." Whitley v. Albers, 475 U.S. 312, 319, 106 S.Ct. 1078, 1084, 89 L.Ed.2d 251 (1986). Prison conditions "that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional." Rhodes v. Chapman, 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981). Assuming the pain inflicted by a prison condition is harmful enough to satisfy that objective standard, "some mental element must be attributed to the inflicting officer before it can qualify." Wilson v. Seiter, 501 U.S. 294, 300, 111 S.Ct. 2321, 2325, 115 L.Ed.2d 271 (1991).
 
 
 35
 Ricker alleges that "Weber and Leapley's intentional conduct in subjecting Ricker to continued confinement in punitive segregation and denying him the opportunity for trustee status" violated the Eighth Amendment. This argument is fatally flawed. While the Eighth Amendment certainly would be implicated if prison officials imposed a barbaric disciplinary penalty, such as flogging, serving an additional thirty to sixty days in punitive segregation is not cruel and unusual punishment as defined in Rhodes.
 
 
 36
 Ricker does not complain about the nature of his punishment; he complains that it was imposed on him when he was innocent of the charges. In general, "allegations that procedural irregularities occurred during [an inmate's] disciplinary proceeding do not involve the Eighth Amendment's protection against the unnecessary and wanton infliction of pain." Brown v. Smith, 828 F.2d 1493, 1494-95 (10th Cir.1987). Ricker cites no case applying the Eighth Amendment to this type of claim. We have found a few cases from other circuits holding that jailers may be liable under the Eighth Amendment for failing to release an inmate who has completed his prison sentence if
 
 
 37
 a prison official had knowledge of the prisoner's problem and thus the risk that unwarranted punishment was being, or would be, inflicted.... [and] the official either failed to act or took only ineffectual action under the circumstances, indicating that his response to the problem was a product of deliberate indifference to the prisoner's plight.
 
 
 38
 Moore v. Tartler, 986 F.2d 682, 686 (3d Cir.1993). Even if we agreed with this Eighth Amendment standard--a question we do not decide[2]--Ricker's case is fundamentally distinguishable. As we have explained, the favorable lab test results did not give Ricker a clear right to release from punitive segregation. At most, the test results suggested that prison officials might have reopened his disciplinary hearing, a remedy that due process did not require. In these circumstances, the Eighth Amendment affords Ricker no greater protection than the Due Process Clause provides. See Whitley, 475 U.S. at 326-27, 106 S.Ct. at 1087.
 
 
 39
 C. Warden Leapley.
 
 
 40
 We have concluded that both Leapley and Weber are entitled to qualified immunity because Ricker has failed to allege a violation of a clearly established constitutional right. We also conclude that the district court erred in denying Leapley qualified immunity on the facts. The court reasoned that whether Leapley knew of the lab test results before December 6, 1990, "is a disputed question of fact." However, Leapley presented uncontroverted evidence that he promptly expunged the conviction from Ricker's record after learning of the lab test results in March 1991. With no evidence to the contrary, Ricker is unable to prove that Leapley knowingly or recklessly deprived Ricker of his due process or Eighth Amendment rights, or was deliberately indifferent to Ricker's disciplinary situation. Qualified immunity is an issue of law that is normally decided prior to trial. See Hunter v. Bryant, --- U.S. ----, ----, 112 S.Ct. 534, 537, 116 L.Ed.2d 589 (1991) (per curiam). Warden Leapley was entitled to a qualified immunity dismissal at this stage of the case.
 
 
 41
 The order of the district court is reversed and the case is remanded with instructions to dismiss Ricker's complaint against Leapley and Weber.
 
 
 42
 HEANEY, Senior Circuit Judge, dissenting.
 
 
 43
 I would affirm the district court as to Doug Weber. The record is perfectly clear that Weber learned that the State Crime Laboratory had identified the substance seized from Kevin L. Ricker's cell as a prescription medication before November 28, 1990, yet Weber failed to promptly notify Warden Leapley of this fact. As a result of this failure, Ricker served thirty additional days in punitive segregation. Ricker's right to release upon discovery that the substance was not cocaine is evidenced by the fact that Warden Leapley expunged Ricker's record promptly after learning the true facts. Weber concedes that he was in charge of Ricker and admits receiving the exculpatory information about Ricker. He also admits that it was his duty to inform Warden Leapley of the facts and that he failed to do so. He was unable to give a reason for this failure, stating only that "evidently I didn't feel it necessary." On the basis of these facts, the district court properly denied Weber's motion for summary judgment.
 
 
 44
 Of course, the possibility remains that Weber may be able to convince a jury at trial that his failure was negligent or inadvertent. In such event, he would be entitled to judgment. However, it is equally likely that Ricker will convince the jury that Weber deliberately kept the report from the warden, knowing that his failure would result in Weber's continued stay in segregation. In that event, Ricker would be entitled to judgment.
 
 
 45
 The majority advances two arguments for denying Ricker relief. First, it states that Ricker did not have a due process right to have his disciplinary proceeding reopened on the ground of newly discovered evidence. The majority acknowledges, however, that Hall v. Lombardi, 996 F.2d 954, 959 (8th Cir.1993), cert. denied, --- U.S. ----, 114 S.Ct. 698, 126 L.Ed.2d 665 (1994), "suggests that Ricker's due process rights were violated if he had a clear right to release from punitive segregation." The majority then finds no clear right because, although the substance turned out to be a prescription drug rather than cocaine, possession of that prescription drug violates the same rules that Ricker was convicted of violating when the substance was believed to be cocaine. Thus, it concludes that Ricker would have served the same penalty for possession of contraband, regardless of whether the substance had been properly identified at the outset.
 
 
 46
 The majority's conclusion is undercut by Warden Leapley's own actions. He expunged Ricker's record promptly after learning of the mistake. If he had said that Ricker should have continued in segregation because he had violated a prison regulation against possession of this unauthorized prescription drug, Ricker would not have a case. That is not what happened. Thus, this case clearly falls under the rubric of Hall rather than that of Herrera v. Collins, --- U.S. ----, ----, 113 S.Ct. 853, 860, 122 L.Ed.2d 203 (1993).
 
 
 47
 Second, the majority says that Weber did not have a due process duty to disclose the favorable lab test results before Ricker completed his ninety-day sentence. It asserts that Weber's decision not to disclose the information was a discretionary decision because Ricker had no due process right to have his discipline reconsidered on the ground of newly discovered evidence. In light of my differing conclusion that Ricker had a clearly established right to be released from punitive segregation, I also conclude that Weber's failure to disclose the information violated that right. Weber admitted his failure to perform this duty, thus leaving only the question of whether the failure to disclose was inadvertent or deliberate. This question should be answered by a jury after trial.
 
 
 48
 Accordingly, I would affirm the district court as to Weber and remand for a trial.
 
 
 
 [1]
 Indeed, "[p]ostconviction relief.... is not part of the criminal proceeding itself.... It is a collateral attack that normally occurs only after the defendant has failed to secure relief through direct review of his conviction. States have no obligation to provide this avenue of relief...." Pennsylvania v. Finley, 481 U.S. 551, 556-57, 107 S.Ct. 1990, 1994, 95 L.Ed.2d 539 (1987). Accord, Murray v. Giarratano, 492 U.S. 1, 8, 13, 109 S.Ct. 2765, 2769, 2772, 106 L.Ed.2d 1 (1989)
 
 
 [2]
 Our decisions in Slone and Hall suggest that we would analyze a refusal-to-release claim under the Due Process Clause, not the Eighth Amendment