# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

———————

No. 96-3108

———————

Eddie O. Buckley, Jr.,                    *
                                          *
       Plaintiff-Appellee,        *
                                          *
   v.                                     *
                                          *        Appeal    from    the    United
                                                States
Russell Rogerson, Warden IMCC;            *        District Court for the
                                          *        Southern District of Iowa
      Defendant.                 *
                                          *
Paul W. Loeffelholz, M.D.,                *
                                          *
      Defendant-Appellant.       *

———————

Submitted:  April 14, 1997
Filed:  January 21, 1998

———————

Before McMILLIAN, Circuit Judge, HENLEY,[1] Senior Circuit Judge, and BEAM,
    Circuit Judge.

———————

McMILLIAN, Circuit Judge.

    Eddie  O.  Buckley,  Jr.,  a prisoner  of  the  Iowa  Department  of
Corrections, brought this  42 U.S.C. § 1983 suit against Paul Loeffelholz,
M.D., and others, complaining of

———————

[1]Judge Henley died on October 18, 1997.  This opinion is consistent with his
vote at the panel's conference following oral argument on April 14, 1997.

his confinement in the Iowa Medical and Classification Center (IMCC) psychiatric hospital for two months in late 1987 and early 1988. Buckley contended in the district court that the repeated use of segregation and restraints without medical approval during his confinement in the mental hospital violated his Eighth Amendment right to be free from cruel and unusual punishment and his Fourteenth Amendment right to due process of law. The claims against the other defendants were dismissed and only Loeffelholz remains a defendant in the suit.

Loeffelholz is the medical director for the Iowa Department of Corrections and also a psychiatrist and clinical director at IMCC. He moved for summary judgment on the theory that any actions he took with respect to Buckley's treatment were protected by qualified immunity. The district court[2] denied the motion for summary judgment. This appeal followed. For reversal, Loeffelholz argues that the district court erred in denying his motion for summary judgment on the ground of qualified immunity. We have jurisdiction pursuant to 28 U.S.C. §1291.[3] For the reasons stated herein, we affirm the order of the district court.

---

[2]The Honorable Donald E. O'Brien, United States District Judge for the Southern District of Iowa.

[3]Under the requirement that appeals may be taken only from a final judgment of the district court, denial of a motion for summary judgment is ordinarily an unappealable interlocutory order. 28 U.S.C. §1291. The Supreme Court has recognized an exception, however, to the final order doctrine in cases where summary judgment in a Section 1983 action is denied on the basis that the defendant lacks qualified immunity. Johnson v. Jones, 515 U.S. 304, 311-12 (1995). In such cases, we have jurisdiction under Section 1291 to review the district court's summary judgment order to the extent that the decision rested on a matter of law. Behrens v. Pelletier, 116 S. Ct. 834, 842 (1996). Here, defendant Loeffelholz contends that the district court erred as a matter of law in concluding that any actions he took with respect to the treatment of Buckley violated any Constitutional right of Buckley which was "clearly established" at the time in question.

## STANDARD OF REVIEW

We review a grant of summary judgment de novo, <u>Merritt v. Reed</u>, 120 F.3d 124, 125 (8th Cir.1997), and under the same standard which governed the district court's decision.  <u>Hall v. Lombardi</u>, 996 F.2d 954, 957 (8th Cir. 1993) (<u>Hall</u>), <u>cert. denied</u>, 510 U.S. 1047 (1994).  The question is whether the record shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); <u>Conrod v. Davis</u>, 120 F.3d 92, 95 (8th Cir.1997).  We view the evidence in the light most favorable to the non-moving party and give the non-moving party all reasonable inferences from the evidence.  <u>Hall</u>, 996 F.2d at 957.  Where a qualified immunity defense is asserted, the party raising that defense has the burden of proving it.  <u>Id.</u>

## BACKGROUND

Buckley entered the Iowa Department of Corrections in March 1985 on a twenty-five year sentence for robbery, assault, and theft.  During his incarceration, a state court determined that Buckley was seriously mentally ill and ordered his civil commitment in the prison mental hospital for diagnosis and treatment.

Buckley was confined at the IMCC psychiatric hospital at Oakdale from November 6, 1987 until January 14, 1988.  While there, he was diagnosed and treated for chronic schizophrenia or schizophrenia-like psychosis.

At the time Buckley was at the Oakdale facility, Loeffelholz was the hospital director and was responsible for the policies and operating procedures of the institution.  Among the polices for which Loeffelholz was responsible were policies under which the hospital staff developed treatment plans for patients. Several treatment plans designed to address several different problems and symptoms were developed for

Buckley.[4]

Buckley originally filed his complaint in 1988. The case was tried to a jury in August 1993 but resulted in a mistrial. A second jury trial was held in November 1993 which resulted in a verdict favorable to the defendants. After the second trial, the district court granted Buckley's motion for a new trial and also granted Loeffelholz's motion to file a dispositive motion. Loeffelholz then filed a motion for summary judgment based on qualified immunity, which the district court denied.

In the district court, Buckley's principal contention against Loeffelholz[5] was that the hospital's policies and procedures allowed correctional officers -- rather than trained medical personnel -- to develop and implement the treatment plans. Buckley also contended that the treatment plans which were developed lacked sufficient specificity to guide the staff in administering the treatment. Buckley argued that Loeffelholz's conduct constituted deliberate indifference to a serious medical need and violated his Eighth and Fourteenth Amendment rights.

On these contentions, the district court made the following findings of fact based in part on the evidence which was introduced in the previous trials.

> While Buckley resided in Oakdale, defendant Dr. Paul Loeffelholz was responsible for developing the policies and operating procedures of the

---

[4] Treatment plan one involved schizophrenia-like psychosis. Treatment plan two concerned the refusal to comply. Treatment plan three related to poor sleeping habits. Treatment plan four addressed poor money management. Treatment plan five involved failure to follow smoking policies. Treatment plan six related to failure to meet expectations.

[5] The Iowa Medical and Classification Center, warden Russell Rogerson, and several other individuals were also named as defendants but were later dismissed from the case.

institution. These policies allowed the Oakdale staff to develop "treatment plans" designed to address Buckley's mental illness. At trial, Buckley introduced evidence that, rather tha[n] assign its staff doctors to his case, the prison entrusted the responsibility of implementing and administering many of Buckley's treatment plans to correctional officers who had no medical training. Dr. Fredrickson, one of Oakdale's medical doctors, testified that correctional officers were allowed to initiate treatment of Buckley without Dr. Fredrickson's approval.

Part of the "treatment" in these treatment plans involved stripping Buckley of his clothes and placing him in a Spartan "quiet" or "segregation" cell. Other parts of the "treatment" involved placing Buckley in restraints so that h[e] could hardly move. There was testimony at the full trial that segregation and restraints the correctional officers ordered for Buckley were more akin to punishment than treatment. The evidence further showed that Buckley was forced into the "quiet" room on seventeen occasion[s] without human necessities such as clothes, a blanket, a bed, and a mattress. Buckley testified it was "very cold" in the quiet room, that he could not hear outside noises when he was in the quiet room, and that a doctor never checked on him while he was in the quiet room. The evidence also showed that the decision to send Buckley to the quiet room was made by non-medical staff. Dr. Loeffelholz, ostensibly responsible for Buckley's treatment, checked on Buckley once every ninety days.

Dr. Herbert Notch, a licensed clinical psychologist with solid credentials and experience, testified that he examined Buckley's medical records which showed Buckley has a major personality disorder, with an antisocial personality, possible paranoid behavior, and some schizoid tendencies. Dr. Notch further testified that, while an average inmate might be isolated in a quiet room and not suffer any harm, a person with Buckley's illness would tend to suffer exacerbation of his already serious symptoms. Dr. Notch further testified that he could conceive of no legitimate medical reason why an inmate with Buckley's mental illness would be deprived of a mattress. Dr. Notch also indicated that, at times, the "treatment" that Buckley received more closely resembled punishment than anything else. Dr. Notch testified that, unlike some patients, mental

health patients should not be punished as part of their treatment.

Dr. Notch also testified that the treatment Buckley received was contrary to accepted treatment of mental health patients. Dr. Notch's greatest objection to Buckley's treatment plan was that it did not adequately describe how to help Buckley improve his behavior. For example, one treatment plan stated that Buckley had "poor money management skills," but it contained little or no description of the procedures that penitentiary staff needed to use with Buckley to help him manage his money prudently. Similarly, another of Buckley's treatment plans stated that Buckley need[ed] to improve his sleeping habits, but was woefully short on specifics needed to guide the people who were assigned to help Buckley.

Finally, Dr. Notch testified that the "violations" Buckley was supposed to have committed, such as sleeping in the daytime and failure to follow the smoking policy, were more like violations of routine hospital procedures than they were serious psychiatric deficiencies that needed treatment.

Buckley v. Loeffelholz, No. 88-CV-51691, slip op. at 2-4 (S.D. Iowa July 8, 1996). Based on these facts the district court concluded that in November 1987 Buckley had a clearly established right not to be placed in segregation without medical staff approval and that Dr. Loeffelholz knew or should have known that the correctional staff was violating that right acting under the policies and procedures he developed. Id. at 13-16.

**DISCUSSION**

Under the doctrine of qualified immunity, a government official is immune from suit unless the conduct complained of violated "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982) (Harlow). For a right to be deemed clearly established, the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v.

*Creighton*, 483 U.S. 635, 640 (1987).  The official is not required to guess the direction of future legal decisions, *Mitchell v. Forsyth*, 472 U.S. 511, 535 (1985), but may rely on preexisting case law for guidance.  *Coffman v. Trickey*, 884 F.2d 1057, 1063 (8th Cir. 1989), *cert. denied*, 494 U.S. 1056 (1990).  Whether an individual will be held liable for his official actions depends upon the "objective legal reasonableness" of those actions.  *Harlow*, 457 U.S. at 819. "Where an official could be expected to know that certain conduct would violate statutory or constitutional rights, he should be made to hesitate . . . ."  *Id.*

We have recently explained that under *Harlow* a defendant's assertion of a qualified immunity defense requires us to address three issues:

> (1) whether the plaintiffs have asserted a violation of a constitutional or statutory right; (2) if so, whether that right was clearly established at the time of the violation; and (3) whether, given the facts most favorable to the plaintiffs, there are no genuine issues of material fact as to whether a reasonable official would have known that the alleged action violated that right.

*Burnham v. Ianni*, 119 F.3d 668, 673-74 (8th Cir. 1997) (en banc) (*Burnham*).

## Constitutional Right

The Eighth Amendment proscription against cruel and unusual punishment has been held to bar deliberate indifference to serious medical needs, *Estelle v. Gamble*, 429 U.S. 97, 105 (1976), where the defendant knew of and disregarded such needs, *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  In addition, the Supreme Court has held that the freedom from bodily restraint is at the core of the liberty interest protected by the due process clause.  *Youngberg v. Romeo*, 457 U.S. 307, 316 (1982).  Thus, even a prisoner has a constitutionally protected interest in "conditions of reasonable care and safety [and] reasonably nonrestrictive confinement conditions . . . . [which] comport

-7-

fully with the purpose of . . . [the] commitment."  Id. at 324.

The district court concluded that Buckley had asserted a violation of Eighth and Fourteenth Amendment rights not to be placed in restraints or segregation absent a doctor's approval.

> Buckley alleges [Loeffelholz] has violated his clearly-established right not to be placed in segregation without specific approval from a medical doctor.  By this, Buckley means that it is not enough for a doctor [to] issue a blanket order allowing segregation for rules violations, because such an order would not constitute the medical judgment required to avoid the requirements of the Due Process Clause or the Eighth Amendment. Buckley argues a doctor's approval is required each time an inmate is placed in segregation.

Slip op. at 7 (footnote omitted).  We agree with the district court that Buckley's allegations are sufficient to state a violation of a constitutional right.

**<u>Was the right "clearly established"?</u>**

Loeffelholz focuses his argument on the second issue, contending that -- even assuming there is a constitutional right to specific medical approval of segregation and restraint for prison mental patients -- no such right was clearly established in the law at the time in question. Loeffelholz bears the burden of proving that this right was not clearly established.  Burnham, 119 F.3d at 674.

As we have noted in previous cases, this court has taken a "broad view" of what constitutes clearly established law for purposes of qualified immunity.  Id. at 677.

> In order to determine whether a right is clearly established, it is not necessary that the Supreme Court has directly addressed the issue, nor does the precise action or omission in question need to have been held

-8-

unlawful. In the absence of binding precedent, a court should look to all available decisional law, including decisions of state courts, other circuits and district courts.

Norfleet v. Arkansas Dep't of Human Services, 989 F.2d 289, 291 (8th Cir. 1993) (internal citations omitted); cf. Anderson v. Romero, 72 F.3d 518, 525 (7th Cir. 1995) (noting district court decisions are evidence of the state of the law, but by themselves cannot clearly establish the law). We must look, then, at the state of the decisional law at the time in question to determine whether a reasonable person in Loeffelholz's position could have known that his conduct would violate Buckley's Eighth or Fourteenth Amendment rights.

In concluding that the law at the time of Buckley's confinement in late 1987 and early 1988 clearly precluded his segregation or restraint without medical approval, the district court relied heavily on Burks v. Teasdale, 492 F. Supp. 650 (W.D. Mo. 1980) (Burks). Burks was a class action challenging various aspects of medical treatment received by prisoners in the Missouri state prison hospital. Among their claims, the plaintiffs specifically challenged the use of seclusion and restraint for mental patients without authorization by a physician. The district court held that the use of seclusion or restraints by custody personnel on a non-emergency basis violated due process: "Insofar as the use of seclusion and/or restraints for mentally disturbed inmates can only be used for medical purposes without running afoul of due process guarantees, this Court holds that custody personnel are unqualified to make such determinations on a non-emergency basis." Id. at 679. As the district court correctly noted, this holding is directly on point and demonstrates that at least by May 1980 there was solid authority within this circuit proscribing the very conduct challenged by Buckley.[6]

---

[6]A year earlier another district court case from Missouri had addressed the procedures necessary to protect mental patients when seclusion or physical restraint was used. The court there concluded that the state hospital had violated mental patients' due process rights by not implementing its own regulations. Those regulations required seclusion or restraint orders to be signed by a doctor except in an emergency and for a doctor to be notified when seclusion or restraint was imposed on an emergency basis so that the doctor could determine quickly whether the seclusion or restraint should be continued. Eckerhart v. Hensley, 475 F. Supp. 908, 926 (W.D. Mo. 1979), vacated on other grounds, 716 F.2d 909 (8th Cir. 1983) (table).

The district court also pointed to Negron v. Preiser, 382 F. Supp. 535 (S.D.N.Y. 1974) (Negron), as even earlier authority for the constitutional limits on the use of seclusion and restraint for prisoners being treated for mental illness. After recognizing due process limits on the use of seclusion and restraint, the court in Negron concluded that the first step in protecting patient rights was the keeping of detailed records:

> The Court will require extensive records to be kept of every instance in which an isolation cell is used. The purpose of such records will be to ensure and document that the decision to use the isolation cell is based on explicit criteria, is reviewed at the requisite brief intervals, and is, where possible, supplemented by other forms of treatment. . . . Specifically, the Court requires a daily record, with a detailed statement of the examining physician's clinical observations of the patient, including the patient's physical condition, apparel, overt behavior, and mental status, a statement of the physician's reasons for initiating or continuing the seclusion procedure, and a statement of his treatment plan.

Id. at 543. Although the court in Negron did not specifically require approval by a physician in advance of the use of seclusion or restraint, the required record keeping provision essentially mandated a physician's involvement soon thereafter and required a trained medical professional to decide whether to continue the seclusion in each instance.

Similarly, in United States v. Michigan, 680 F. Supp. 928 (W.D. Mich. 1987), the court recognized constitutional limitations on the treatment of mentally ill prisoners and required state prison officials to follow strict procedures for the use of seclusion or restraint. These detailed procedures included examination of the inmate by a

physician or qualified mental health professional within one hour after the patient was placed in seclusion or restraint, the use of seclusion for no longer than six hours without another physician seclusion order, and the use of restraints for no longer than two hours unless a physician again signed a restraint order.  Again, we agree with the district court that the decisions in Negron and Michigan provide strong support for Buckley's claim that clearly established law in late 1987 required that segregation and restraint decisions should be made by qualified medical professionals.

Loeffelholz relies on two cases for the proposition that no such right was clearly established at the time in question.  First, Loeffelholz cites Rogers v. Evans, 792 F.2d 1052 (11th Cir. 1986) (Rogers).  In Rogers, the plaintiffs brought suit alleging inadequate treatment and care after the apparent suicide of their daughter in a segregation cell.  The Eleventh Circuit  agreed with the district court that there was insufficient evidence of a failure of medical care or of deliberate indifference to serious medical needs to state a claim against prison supervisory personnel and dismissed the complaint as to those defendants.  Id. at 1058.  The court refused to dismiss as to the consulting psychiatrist, however, concluding that sufficient facts were alleged to allow that claim to go to trial.  Id. at 1060.

Rogers tends to support  Buckley's contention that a mental patient's right to have his treatment determined by a doctor was clearly established. The court in Rogers explicitly stated that "systemic deficiencies can provide the basis for a finding of deliberate indifference."  Id. at 1058.  The court in Rogers concluded that the plaintiffs had not come forward with enough evidence to show deliberate indifference by some supervisory personnel but had presented a triable issue as to the liability of the consulting psychiatrist.  Here, Buckley has come forward with substantial evidence of repeated instances where non-medical personnel made decisions to place him in an isolation cell or restraints and where no approval from a qualified physician or mental health professional was obtained either before or shortly after that decision.  We believe this more closely corresponds to the evidence presented against the consulting

psychiatrist in <u>Rogers</u>, and thus the district court was correct to refuse summary judgment in the present case.

Similarly, <u>Konigsberg v. Ciccone</u>, 285 F. Supp. 585 (W.D. Mo. 1968), <u>aff'd</u>, 417 F.2d 161 (8th Cir. 1969), <u>cert. denied</u>, 397 U.S. 963 (1970), also cited by Loeffelholz, does not support his contentions. In that habeas corpus case the prisoner alleged various constitutional deficiencies in his treatment at a federal prison medical center. Among the claims, the prisoner alleged that he had been held for several hours without clothes in a strip cell. However, the facts in that case showed that efforts were made immediately to notify his physician. The physician happened to be away from the facility for lunch but returned to examine the prisoner within several hours of his confinement in the strip cell. In finding that there was no Eighth Amendment violation on these facts, the court emphasized that this was a single isolated incident, that the delay in a physician examining the prisoner was due merely to happenstance, and that the incident was unlikely to reoccur given the facility's strict policy requiring approval by a medical official of use of the strip cell. On the other hand, Buckley here contends that during his stay in the hospital he was routinely placed in restraints or stripped and put in the segregation cell and the district court found that this was done without the close supervision of a trained medical staff member.

We believe that the district court correctly concluded that case law clearly established at the time in question that the decision to use segregation or restraints had to be made under close medical supervision.

**<u>Would a reasonable official have been aware that the alleged action violated the right?</u>**

In <u>Harlow</u>, the Supreme Court stated that if "the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct." 457 U.S. at 818-19. The Court went on

to say, however, that the official might still be entitled to immunity if he could prove that he neither knew, nor should have known, of the legal standard. Id. at 819. Thus, the third prong of our inquiry focuses on whether there are any unusual facts which show that this particular official should not be held liable even for a violation of clearly established law. Burnham, 119 F.3d at 673-74.

In the district court and in his brief on appeal, Loeffelholz focused on the first two prongs of the Burnham test: that no constitutional right existed and that even if it did it was not clearly established in late 1987. Loeffelholz did not address and presented no evidence on the third prong of the Burnham test which asks whether a reasonable official would have been aware that his alleged conduct violated the constitutional right. For this reason, the record reveals no special circumstances which should relieve Loeffelholz of responsibility for following clearly established law.

**<u>CONCLUSION</u>**

In sum, we agree with the district court that Loeffelholz was not entitled to summary judgment based on qualified immunity on Buckley's due process and Eighth Amendment claims.

For the reasons stated herein, the order of the district court is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-13-